HUGH M. MATCHETT, Plaintiff-Appellant, *v.* CHICAGO BAR ASSOCIATION *et al.*, Defendants-Appellees.

First District (4th Division)   No. 82—1021

Opinion filed May 17, 1984.—Rehearing denied August 9, 1984.

Hugh M. Matchett, of Chicago, *pro se.*

A. Daniel Feldman, Steven R. Gilford, and Rebecca J. Lauer, all of Isham, Lincoln & Beale, of Chicago, for appellee Field Enterprises, Inc.

John F. McCarthy and Philip A. Creed, both of Chicago (McCarthy and Levin, of counsel), for appellee Chicago Bar Association.

Reuben & Proctor, of Chicago (Samuel Fifer, Charles J. Sennet, and Lawrence Gunnels, of counsel), for appellate Chicago Tribune Co.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, Hugh M. Matchett, a Chicago attorney, brought this libel action in the circuit court of Cook County seeking a declaratory judgment, injunctive relief, and damages against defendants, the Chicago Bar Association (CBA), the Chicago Tribune Company, and Field Enterprises, Inc., publisher of the Chicago Sun-Times. The motions to dismiss filed by all three defendants were granted, and plaintiff's subsequent motions to vacate the dismissal and to amend his complaint were denied.

On appeal, plaintiff charges that the circuit court erred (1) in refusing his requests for both injunctive relief and a declaratory judgment, (2) in dismissing his complaint for failure to state a cause of action for libel, and (3) in denying his motion for leave to amend his complaint.

We affirm the decision of the trial court.

FACTS

Hugh M. Matchett was a candidate for nomination by the Republi-

can party for the office of justice of the appellate court in the March 16, 1982, primary election. The CBA, "[r]ecognizing the responsibility of the legal profession to ensure that qualified judges are elected" (*Anagnost v. Chicago Bar Association* (1980), 83 Ill. App. 3d 466, 468, 404 N.E.2d 326, 327) and claiming a legitimate interest in the qualifications of candidates for judicial office, invited each candidate for judicial office voluntarily to submit to its evaluation procedures, the results of which would form the basis of a published listing indicating whether a particular candidate had been rated as "Highly Recommended," "Recommended," or "Not Recommended." Although the candidates were informed of the criteria used by the CBA, the public was not, and the candidates were not informed of the results of the evaluation on each of the criteria.

In December 1981, Matchett submitted the required information to the CBA's committee on evaluation of candidates, and an investigator reviewed his completed questionnaire, interviewed listed references and other attorneys, and considered other available products of his work. The committee compiled a detailed written report that was submitted to a hearing panel prior to the panel's interview of Matchett. At the conclusion of the interview, the panel voted on its evaluation; and on January 13, 1982, the results were sent to Matchett in a letter from the president of the CBA that stated, *inter alia*, "I regret to advise you that the Committee has concluded that you do not meet its established criteria for this important office, by reason of age, and therefore found you 'Not Recommended.' "

As Matchett was aware, the CBA has a policy of not recommending candidates for the office of judge of the appellate court if they are over 65 years of age and are seeking judicial office for the first time, unless they exhibit exceptional qualifications, the reason being they will not be able to complete one full 10-year term before the mandatory retirement age of 75. Matchett was 69 at the time of the CBA evaluation.

On February 22, 1982, the CBA issued a press release, explaining the process of evaluation and giving the final rating for each candidate. Matchett was rated "Not Recommended." The Chicago Tribune reported the CBA's action on the following day, February 23; the Chicago Sun-Times carried the story on February 24.

The Tribune article reported both the CBA's unelaborated rating and Matchett's comment:

> "The bar association found only one judicial candidate unqualified: Hugh M. Matchett, a Chicago attorney running for the Republican nomination to the Illinois Appellate Court.

The association, in its press release, gave no reason for the rating. Matchett said it told him he received a 'not recommended' rating because of his age, which is 69."

The Sun-Times article stated,

"The only judicial candidate found unqualified by the bar group was Hugh M. Matchett, a Chicago lawyer who is seeking the Republican nomination for the Illinois Appellate Court.

Matchett, 69, said the association told him he was unqualified because of his age. The bar group did not comment on the rating."

On February 23, Matchett sent a letter to Kevin M. Forde, president of the CBA, requesting a retraction of the age rule on the grounds that not only is age an irrelevant criterion, but also age discrimination in employment has been expressly forbidden by the Illinois General Assembly. Further, on the basis of Forde's letter to him, Matchett assumed that he had been found "Recommended" in all respects other than age, and therefore the CBA should issue a new statement rating Matchett as either "Recommended" or "Well Recommended." No action was taken by the CBA.

On March 12, 1982, four days before the primary election, Matchett filed this suit, claiming that he had been defamed in his professional capacity as an attorney and candidate for judicial office by all three defendants. The CBA was named because its "Not Recommended" rating implied that Matchett was not recommended on the basis of the overall investigation and evaluation, and the two newspapers because they used the word "unqualified" to describe the CBA's finding; indeed, the Sun-Times stated that the CBA had rated Matchett as unqualified, while the Tribune reported the correctly worded rating but used the term "unqualified" to summarize the CBA's evaluation of Matchett. Although the suit did not request a specific sum of money in damages, Matchett asked the defendants to submit proposals for a reasonable amount.

In addition, Matchett asked for a declaratory judgment against the CBA, stating that, aside from the age criterion, he had been found qualified or well qualified. Finally, Matchett moved for a mandatory injunction to compel the newspapers to publish both the letter he had sent to Forde and an apology or retraction concerning the CBA's "Not Recommended" rating, as well as a negative injunction to restrain defendants from "any further conduct of the kind complained of," which we presume to mean unelaborated ratings, ratings based on age, and interpretation of ratings using allegedly defamatory terms.

All three defendants filed motions to dismiss the complaint for failure to state a claim upon which relief may be granted, their main argument being that both injunctions requested could not be granted because of first amendment freedoms. In addition, they variously maintained that both the original press release and the newspaper reports concerning the CBA's findings were entitled to a qualified privilege, and that Matchett's pleadings did not contain allegations and supporting facts sufficient to establish the "actual malice" necessary to overcome the privilege.

The trial court, without comment, granted the motions of all three defendants and dismissed the complaint with prejudice. Upon the denial of his motion to vacate the judgment and to amend his complaint to contain a bill of discovery and to challenge the validity of the constitutional and statutory sections providing for the mandatory retirement of judges, Matchett filed this appeal.

OPINION

Turning first to a consideration of the propriety of the trial court's refusing Matchett's request for injunctive relief, we note that although in the three motions to dismiss only the Tribune Company responded directly to Matchett's allegations that he had a clear right in need of protection, that he would suffer irreparable injury if the injunctions were not granted, and that he had no adequate remedy at law, all three defendants correctly selected the fourth requirement for an injunction, *i.e.*, that the movant has a likelihood of success on the merits (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 422 N.E.2d 1166), as the target for their strongest arguments.

In *Miami Herald Publishing Co. v. Tornillo* (1974), 418 U.S. 241, 258, 41 L. Ed. 2d 730, 741, 94 S. Ct. 2831, 2840, the Supreme Court held that a government's intrusion into a newspaper's editorial decisions concerning what and what not to publish imposed an unconstitutional prior restraint on the press in violation of the first amendment:

"The choice of material to go into a newspaper *** and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this process can be exercised consistent with First Amendment guarantees of a free press."

Further, it is settled law that unless a plaintiff can establish the existence of one of a very limited number of exceptions, equity will not enjoin the publication of a libel, so strong are the constitutional guarantees of freedom of speech and of the press. *Montgomery Ward & Co.*

*v. United Retail, Wholesale & Department Store Employees of America* (1948), 400 Ill. 38, 79 N.E.2d 46.

◼◼ ◼ A reviewing court will reverse the trial court only if it finds that the issuance or denial of a request for injunctive relief was against the manifest weight of the evidence. (*La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 440 N.E.2d 1073.) Clearly, such was not the case here. We therefore find no error in the trial court's refusal to grant Matchett injunctive relief. In addition, the above reasoning and disposition apply equally to his request for a declaratory judgment against the CBA; by asking that the bar association acknowledge that he fulfilled all criteria for a "Recommended" or "Highly Recommended" rating other than age, Matchett is attempting to force the CBA to make public statements that the bar association does not choose to make. The CBA never promised to inform the public of its criteria, nor did it promise Matchett to inform him of the results of the committee's vote on each item in the total evaluation. All it promised to do was inform Matchett of the reason for the committee's rating, which it did; Matchett may not compel the association to publish information it has chosen not to publish.

## II

The second claim of error Matchett raises on appeal is that the trial court erred in dismissing his complaint for failure to state a cause of action for libel *per se*. Because the analysis of the complaint against the newspapers is different from that of the complaint against the CBA, we will deal with each in turn.

For a plaintiff to recover in an action based on libel *per se*, the statement serving as the basis of the action must falsely charge the plaintiff with an incapacity or misconduct in words so obviously damaging that proof of actual injury need not be made. (*Costello v. Capital Cities Media, Inc.* (1982), 111 Ill. App. 3d 1009, 445 N.E.2d 13.) Of the four categories of words constituting libel *per se*, two serve as the basis of the complaint in the instant case: an imputation of unfitness in performing the duties of an office or employment, and an imputation that a person lacks ability in his business, trade, or profession. *Fried v. Jacobson* (1983), 99 Ill. 2d 24, 457 N.E.2d 392.

Even if the language at issue charges a plaintiff with unfitness or lack of ability, however, it will not be actionable if the statement is clearly one of opinion, not of fact. As emphasized in *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997, liability will not accrue for the utterance of a defamatory opinion;

however, the first amendment does not preclude liability for a published statement that implies the existence of undisclosed facts that are both false and defamatory. (*Howell v. Blecharczyck* (1983), 119 Ill. App. 3d 987, 457 N.E.2d 494.) Although the defendants in the instant case maintain that the published statements were opinions and therefore not actionable, it appears clear to us that the statements were opinions based on undisclosed facts.

However, even an allegation of libel *per se* for a statement of opinion based on undisclosed facts may not be actionable. When "considered in context, with the words and the implications therefrom given their natural meaning; if *** the statement may reasonably be innocently interpreted *** it cannot be actionable *per se*. This preliminary determination is properly a question of law to be resolved by the court." (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199.) Our initial task therefore, is to ascertain whether the language allegedly defaming Matchett in his chosen profession is susceptible to an innocent construction.

When we turn to an examination of the newspaper stories claimed to be defamatory, it is clear that the crucial word is "unqualified." In its summary of the press release, the Chicago Tribune substituted the word "unqualified" for the CBA's term "Not Recommended," although it reported the correct term when speaking of the actual rating. In addition, and crucial to this case, it correctly reported Matchett's explanation for the rating, which was given on account of his age. The Sun-Times article incorrectly reported that the CBA had found Matchett unqualified instead of using the correct rating. However, it accurately reported Matchett's explanation of the rating. Matchett charges that the word "unqualified," coupled with the CBA's unexplained "Not Recommended" rating, connotes undisclosed defamatory facts and therefore is actionable as libel *per se*.

██ Applying *Chapski* innocent construction rule, the natural and obvious meaning of the words in context is that Matchett was not recommended by the CBA for the office of appellate court judge simply because of his age. "[A]n innocent construction requires a fair reading of the entire article which gives the words their meaning. Isolated words *** may not be taken out of context." (*Crinkley v. Dow Jones & Co.* (1983), 119 Ill. App. 3d 147, 152, 456 N.E.2d 138, 142.) While some readers might interpret the word "unqualified" to mean "unfit for office," the innocent and true meaning of the CBA's rating, appearing as it did within three sentences of the challenged word, renders the newspapers' language nonactionable as libel *per se*. Accordingly, we find no error in the trial court's granting the motions to

dismiss filed by the two newspapers.

Matchett's second charge of libel, that against the CBA, is based on the February 22, 1982, press release, in which the bar association gave Matchett an unelaborated rating of "Not Recommended." Because a reader could not ascertain which of the possibly pertinent criteria he had failed to meet, Matchett charges that the unelaborated rating was defamatory in that it implied that the rating was the result of the overall investigation and evaluation. Further, Matchett charges that the CBA knew, or in the exercise of reasonable care should have known, that the press and public would interpret the words "Not Recommended" to mean "Not Qualified," with the result that his fitness for office and his professional competency would be called into question. We do not agree.

The doctrine of freedom of speech and of the press represents "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 270, 11 L. Ed. 2d 686, 701, 84 S. Ct. 710, 721.) Because it is crucially important that people should discuss the character and qualifications of candidates for public office, a publication concerning a public official or public figure, which includes candidates for office, is protected from suit for defamation unless the public official or public figure can demonstrate that the falsehood was published with "actual malice," *i.e.*, with knowledge that it was false or with reckless disregard of whether it was false or not. 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726.

■ This qualified privilege of publication is abused only if the speaker " 'does not believe in the truth of the defamatory matter, or has no reasonable grounds for believing it to be true.' " (*Allen v. Ali* (1982), 105 Ill. App. 3d 887, 891, 435 N.E.2d 167, 170, quoting *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 350, 243 N.E.2d 217, 221.) Where, as here, a plaintiff makes a bare conclusionary allegation of malice without supporting facts, he has failed to overcome the qualified privilege that attached to the published communication. (*Allen v. Ali* (1982), 105 Ill. App. 3d 887, 892, 435 N.E.2d 167, 170-71.) We therefore find that the trial court properly dismissed Matchett's complaint against the CBA.

III

■ Last, Matchett contends that the trial court's denial of his motion to amend his complaint was an abuse of discretion. We disagree. Although Matchett maintains that some of the proposed amendments would have raised constitutional issues, our examination

of his statement of those issues reveals that the CBA, which has no actual control over the use of age in a discriminatory manner in order to force retirement, is an inappropriate defendant for such a suit. Other amendments would have converted the complaint into one for a declaratory judgment and a request for a bill of discovery. Since none of the suggested amendments would have cured the defects in the pleadings, the trial court's denial of the motion was not an abuse of discretion. *Reardon v. Ford Motor Co.* (1972), 7 Ill. App. 3d 338, 287 N.E.2d 519.

Accordingly, for all the reasons set forth above, we find the complaint to be insufficient to state a claim upon which relief may be granted, and we affirm the trial court's dismissal of all counts.

Affirmed.

JOHNSON and ROMITI, JJ., concur.