**Victor D. QUILICI, Plaintiff-Appellant,**

v.

**SECOND AMENDMENT FOUNDATION, et al., Defendants-Appellees.**

No. 84–2255.

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1985.

Decided July 30, 1985.

Rehearing Denied Sept. 9, 1985.

* The Honorable Floyd R. Gibson, Senior Circuit Judge, United States Court of Appeals for the

Patrick A. Barton, Forest Park, Ill., for plaintiff-appellant.

Anne G. Kimball, Wildman Harrold Allen & Dixon, Chicago, Ill., for defendants-appellees.

Before ESCHBACH and FLAUM, Circuit Judges, and GIBSON, Senior Circuit Judge.*

FLOYD R. GIBSON, Senior Circuit Judge.

The plaintiff, Victor D. Quilici, appeals from the district court's grant of summary judgment upon the defendants', collectively

Eighth Circuit, is sitting by designation.

referred to as the Second Amendment Foundation, motion to dismiss under *Fed.R. Civ.P.* 12(b)(6). We affirm.

## I.

The plaintiff was one of three attorneys who delivered oral arguments before this court on appeal of a district court decision upholding the constitutionality of a handgun ban passed by the Village of Morton Grove. *See generally Quilici v. Village of Morton Grove*, 532 F.Supp. 1169 (N.D.Ill. 1981), *aff'd*, 695 F.2d 261 (7th Cir.1982) (Coffey, J., dissenting), *cert. denied*, —— U.S. ——, 104 S.Ct. 194, 78 L.Ed.2d 170 (1983). The defendants publish a newsletter, "The Weekly Bullet." In its June 7, 1982, issue, The Weekly Bullet commented on the oral argument in the handgun ban case before this court. The June 7th article, in pertinent part, with emphasis added, is as follows:

### MORTON GROVE APPEAL HEARD IN CHICAGO

On Friday, May 28, a three-judge panel of the U.S. Court of Appeals: Seventh Circuit, heard the oral arguments of the pro-gun appeal to Judge Decker's onerous decision which upheld the Morton Grove handgun ban. Decker's decision had been handed down last December. Pro-gun attorney Victor Quilici, the Second Amendment Foundation and the National Rifle Association all filed appeals to overturn it in March.

The oral arguments were heard Friday morning in Chicago at the Federal Building. Second Amendment Foundation attorney Don B. Kates, Jr., noted criminologist and pro-gun scholar, and NRA attorney Dan Moran of the Chicago law firm Peterson and Houpt, made presentations to the judges on behalf of the individual plaintiffs supported by their respective organizations. Quilici represented himself....

Unfortunately, the presentation by the pro-gun side was beset with problems, leading one observer to remark that the appeal may be seriously jeopardized by the manner in which the oral arguments were made.

Greg McDonald, SAF executive director, attended the hearings in Chicago and agreed with the assessment. McDonald said, "I was pleased by the way in which our attorneys and the NRA attorneys cooperated. *But quite frankly, I felt that the presentation made by Victor Quilici was poor. It may have sunk our appeal.*"

Because three cases were filed challenging the Morton Grove ordinance by three separate parties, the federal court consolidated the cases into one. This has meant that three groups of attorneys have had to work together in the preparation of briefs and oral presentations. So far this working relationship has fared well, despite some strains.

However, apparently *Quilici was very uncooperative during the preparation of the oral presentations for the appeal.* The pro-gun side was given thirty minutes by the Court to present the appeal. The NRA and SAF attorneys had worked to divide the responsibilities for presentation of the arguments. Quilici was supposed to have gone first, presenting several arguments relating to the Illinois Constitution and using no more than 6 minutes. The NRA was to follow, presenting additional Illinois constitutional arguments and then present arguments to the Court asking it to abstain until the Illinois State Supreme Court issued a ruling. The NRA was to have taken about 5 minutes.

Finally, SAF attorney Don Kates was to present a 4 to 5 minute argument explaining that the Second Amendment to the U.S. Constitution prohibited Morton Grove-type gun bans.

Unfortunately, *Victor Quilici took 13 minutes to make his presentation, using up nearly half the total time allocated to the pro-gun side. Even worse, his presentation was rambling and often pointless.* The ultimate outcome was that the pro-gun side ran out of time in the middle of the Second Amendment

presentation. Moreover, all time reserved for rebuttal to the Morton Grove response had been used up by Quilici. Despite that, the Court permitted NRA attorney Moran to make a one minute rebuttal to the anti-gun Morton Grove presentation.

*The outcome may be known within a few weeks. But the disastrous problems caused by Quilici may have severely damaged chances for a favorable ruling.*

In its June 21, 1982, issue, The Weekly Bullet published an article entitled, "In Defense of Mr. Quilici." The June 21st article, in its entirety, is as follows:

It was mentioned in TWB (V7, R19) that pro-gun attorney Victor Quilici used more than the allocated time for presentation of his case during the recent Morton Grove appeals hearing in Chicago. TWB wishes to point out that Quilici was faced with a panel of judges continually interrupting his oral arguments with questions, and that in answering these, Quilici exceeded his time limit. In addition, constant interruptions during an oral presentation make it extremely difficult to maintain a cohesive and organized delivery, especially on such a complex subject.

In no way should the earlier comments in TWB be considered as reflecting on Mr. Quilici's competence in the legal or any other field. SAF feels confident with Mr. Quilici and has contributed substantial financial support to him.

SAF is well aware of all the hard work and long hours Quilici devoted to the Morton Grove case. Every gun owner in America owes him a debt of gratitude for his vigilance and determination in filing the first lawsuit against the infamous Morton Grove ban.

Following the publication of these articles, the plaintiff filed this action in federal court based on the court's diversity jurisdiction. 28 U.S.C. § 1332. In count one of his amended complaint, the plaintiff alleged that the June 7th article contained false, malicious, defamatory, and libelous statements about him. In the second count of the complaint, the plaintiff made the same allegations about the June 21st article. In both counts the plaintiff sought five million dollars in general and ten million dollars in punitive damages. The parties do not dispute that Illinois law controls this case. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941) (in diversity actions a federal court is to apply the choice of laws rules of the forum state); *accord Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526 (7th Cir.1981) (applying Illinois' "most significant relationship" choice of laws test in a diversity action); *see also Ingersoll v. Klein*, 46 Ill.2d 42, 47, 262 N.E.2d 593, 596 (1970) (adopting the Restatement (Second) Conflict of Laws "most significant relationship" test); *Snead v. Forbes*, 2 Ill.App.3d 22, 26–7, 275 N.E.2d 746, 748–49 (1st Dist.1971) (in multistate defamation cases the state with the most significant relationship to the case is usually the state in which the plaintiff resides).

### II.

The plaintiff argues, first, that the trial court erred in granting the defendants' motion to dismiss because it was not clear that the plaintiff would be unable to prove a set of facts in support of his claim. In support of this contention, the plaintiff alleges that the June 7th article contained a misstatement of fact, i.e., that the plaintiff's oral argument took thirteen minutes. Apparently, the argument is that if the plaintiff does prove that this was a misstatement of fact, he will be entitled to recover. Also, plaintiff's complaint averred that the allegedly false statements published by the defendants "were made with knowledge that they were false or with reckless disregard of the truth, i.e., with malice." Because this allegation was a question of fact, the plaintiff argues, dismissal was inappropriate.

A complaint should not be dismissed on a Rule 12(b)(6) motion unless it appears beyond doubt that the plaintiff would be unable to prove a set of facts which would

warrant relief. *Hishon v. King & Spalding*, 467 U.S. 69, ——, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984), *citing, Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Altman v. Hurst*, 734 F.2d 1240, 1242 n. 2 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 385, 83 L.Ed.2d 320 (1985). A motion to dismiss admits well pleaded allegations, and the court reviews those allegations in the light most favorable to the plaintiff. *Richardson v. Dunbar*, 95 Ill.App.3d 254, 255, 50 Ill.Dec. 756, 758, 419 N.E.2d 1205, 1207 (3d Dist.1981) (quoting *Brooks v. Village of Wilmette*, 72 Ill.App.3d 753, 756, 28 Ill.Dec. 934, 936–37, 391 N.E.2d 133, 135–36 (1st Dist.1979)). For purposes of the motion, then, the defendants admitted that the June 7th article incorrectly stated the amount of time that the plaintiff had used during oral argument, and the plaintiff was not required to prove the inaccuracy of the statement.

We note also that the plaintiff does not aver that he suffered any special damages. Thus, his right to recover depends upon whether the statements in question were libelous *per se*. *Fried v. Jacobson*, 99 Ill.2d 24, 26, 75 Ill.Dec. 398, 400, 457 N.E.2d 392, 394 (1983); *Meyer v. Allen*, 127 Ill.App.3d 163, 82 Ill.Dec. 136, 137, 468 N.E.2d 198, 199 (4th Dist.1984); *Costello v. Capital Cities Media, Inc.*, 111 Ill.App.3d 1009, 1010, 67 Ill.Dec. 721, 723, 445 N.E.2d 13, 15 (5th Dist.1982). Whether the articles constituted libel *per se* was a question of law, to be decided in the first instance by the trial court. *Pruitt v. Chow*, 742 F.2d 1104, 1107 (7th Cir.1984) (quoting *Chapski v. Copley Press*, 92 Ill.2d 344, 352, 65 Ill. Dec. 884, 888, 442 N.E.2d 195, 199 (1982)); *Fried*, 99 Ill.2d at 28, 75 Ill.Dec. at 401, 457 N.E.2d at 395 (quoting *Chapski*, 92 Ill.2d at 352, 65 Ill.Dec. at 888, 442 N.E.2d at 199); *Matchett v. Chicago Bar Ass'n.*, 125 Ill. App.3d 1004, 1010, 81 Ill.Dec. 571, 576, 467 N.E.2d 271, 276 (1st Dist.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). The question of whether the articles were published with malice would not have to be reached unless the articles were libelous *per se*. *See Allen v.*

*Ali*, 105 Ill.App.3d 887, 889, 61 Ill.Dec. 678, 680, 435 N.E.2d 167, 169 (1st Dist.1982); *Richardson*, 95 Ill.App.3d at 258, 50 Ill. Dec. at 760, 419 N.E.2d at 1209. Thus, whether it was proper for the district court to grant the defendant's motion to dismiss hinges on the question of whether the court correctly determined that the articles were not libelous *per se*.

The district court held that the articles did not constitute libel *per se* because the June 7th article amounted only to a criticism of the plaintiff's performance on one occasion, and because the June 21st article could not be described as an attack against the plaintiff at all. The plaintiff argues that this decision clearly was incorrect, because when the allegedly libelous statements are viewed in the context of both articles and the surrounding circumstances they amount to a general attack on his ability to perform the responsibilities of an attorney. The plaintiff argues also that the statements, again when read in the context of the articles and the surrounding circumstances, impugn his integrity. Thus, they are libelous *per se*. We disagree.

■ Of the four categories of words which may constitute libel *per se* under Illinois law, two serve as the basis for the complaint in this case: words which impute an inability to perform, or want of integrity in the discharge of duties of an office or employment; or words which prejudice a party in his or her profession or trade. *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 286 (7th Cir.1983) (quoting *American Pet Motels, Inc. v. Chicago Veterinary Medical Ass'n*, 106 Ill. App.3d 626, 629, 62 Ill.Dec. 325, 328, 435 N.E.2d 1297, 1300 (1st Dist.1982)); *Fried*, 99 Ill.2d at 26, 75 Ill.Dec. at 400, 457 N.E.2d at 394; *Meyer*, 127 Ill.App.3d at 163, 82 Ill.Dec. at 137, 468 N.E.2d at 199. However, as we have noted before, even a statement which fits within one of these categories is not necessarily libelous *per se*. Statements are libelous *per se* when they constitute a serious charge of incapacity or misconduct in words so obviously and naturally harmful that proof of their injurious

character can be dispensed with. *Brown,* 713 F.2d at 268. *See also Fried,* 99 Ill.2d at 26, 75 Ill.Dec. at 400, 457 N.E.2d at 394; *Matchett,* 125 Ill.App.3d at 1008, 81 Ill.Dec. at 575, 467 N.E.2d at 275; *Sloan v. Hatton,* 66 Ill.App.3d 41, 22 Ill.Dec. 783, 784, 383 N.E.2d 259, 260 (4th Dist.1978).

The statements in the June 7th article about which the plaintiff complains may be summarized as follows: that the plaintiff's presentation before this court was poor, and may have "sunk" the appeal; that the plaintiff did not cooperate with the other attorneys arguing on his side of the handgun case; that the plaintiff used more time for oral argument than had been allocated to him and, as a result, used up all the rebuttal time; and that the plaintiff's presentation was "rambling and often pointless." The statement in the June 21st article about which the plaintiff complains is the one which attributed the length of the plaintiff's oral argument to interruptions from the bench.

 Even without considering whether these statements are protected by the "innocent construction" rule, we are not able to say that the statements are "so obviously and naturally harmful" as to constitute libel *per se. Fried,* 99 Ill.2d at 26, 75 Ill.Dec. at 400, 457 N.E.2d at 394. The statements, while uncomplimentary, are the type of criticisms to which every attorney who does appellate work is subjected. Oral arguments occur before appellate courts in an open forum. By accepting the responsibility of argument, attorneys must be willing to accept the criticism that inevitably, in the course of a career, will be forthcoming. These criticisms are more in the nature of opinions on performance rather than statements of fact. Freedom of speech certainly encompasses the right of

the press and others to express their opinions on any matter or event. As noted in *Naked City, Inc. v. Chicago Sun-Times,* 77 Ill.App.3d 188, 32 Ill.Dec. 661, 395 N.E.2d 1042 (1st Dist.1979), "While false statements of fact receive no constitutional protection, the expression of an opinion can never be false so as to constitute a false statement of fact." *Id.* at 190, 32 Ill.Dec. at 662, 395 N.E.2d at 1043 (citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)).

When these articles are considered in light of the innocent construction rule, it is even clearer that they cannot be construed as libel *per se.* The innocent construction rule, as modified by the Illinois Supreme Court,[1] requires that "a written or oral statement is to be considered in context, with the *words* and the *implications* therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted ... it cannot be actionable *per se." Chapski,* 92 Ill.2d at 352, 65 Ill.Dec. at 888, 442 N.E.2d at 199 (emphasis added). There is pre-*Chapski* caselaw to support the proposition that when allegedly libelous statements can be construed as a criticism of an individual in a particular instance or occasion, they will be given an innocent construction. *Britton v. Winfield Pub. Library,* 101 Ill. App.3d 546, 548, 57 Ill.Dec. 100, 102, 103, 428 N.E.2d 650, 652, 653 (2d Dist.1981); *Wade v. Sterling Gazette Co.,* 56 Ill.App.2d 101, 107, 205 N.E.2d 44, 48 (3d Dist.1965); *see Costello,* 111 Ill.App.3d at 1012–15, 67 Ill.Dec. at 724–25, 445 N.E.2d at 16–17 (acknowledging the distinction between general attacks on a party's character and mere criticism of conduct in a particular instance); *McGuire v. Jankiewicz,* 8 Ill. App.3d 319, 320, 290 N.E.2d 675, 676 (1st

---

1. As originally adopted, the innocent construction rule provided that if an allegedly libelous statement could be read to be innocent, it must be so read and declared nonactionable as a matter of law. *John v. Tribune Co.,* 24 Ill.2d 437, 442, 181 N.E.2d 105, 108, *cert. denied,* 371 U.S. 877, 83 S.Ct. 148, 9 L.Ed.2d 114 (1962). In the application of this rule, courts strained to give statements innocent constructions when defamatory constructions were more probable.

*Chapski,* 92 Ill.2d at 350, 65 Ill.Dec. at 887, 442 N.E.2d at 198. Because of the inequities, inconsistencies, and confusion which the original rule caused, and because of the broader protections which exist to protect first amendment interests, together with the availability of various privileges, the Supreme Court of Illinois modified the rule in *Chapski. Id.* at 350–52, 65 Ill.Dec. at 887–88, 442 N.E.2d at 198–99.

Dist.1972) (words "you could not have chosen a worse attorney" were actionable because they imputed to plaintiff a lack of capacity as an attorney and as such prejudiced plaintiff by disparaging his professional reputation). _See also Delis v. Sepsis_, 9 Ill.App.3d 217, 220–23, 292 N.E.2d 138, 141–42 (1st Dist.1972). There is some question as to the continuing validity of applying the innocent construction rule when a distinction can be made between a criticism of a party in a particular instance and a general attack on a party's character.[2] However, assuming that application of the rule still is valid where such a distinction can be made, it is clear that the statements in question here criticize the plaintiff's performance on only one occasion. They say nothing about the plaintiff's character in general.

The plaintiff urges us to read the articles as implying that the plaintiff could not deliver any oral argument, handle any large case, or bring integrity to any legal task. We simply cannot read these implications into the articles. The articles admittedly are uncomplimentary and, as is often the case where a layperson criticizes a specialist's performance in his or her area of expertise, show little awareness of the realities of oral argument before an appellate court and the factors which influence or impress a panel of judges. However, the articles amount to no more than the opinions of two individuals who thought that the plaintiff was uncooperative in preparing an appeal and performed poorly during oral argument. As such, the statements are not actionable as libel _per se. Matchett_, 125 Ill.App.3d at 1010, 81 Ill.Dec. at 576, 467 N.E.2d at 276; _Galvin v. Gallagher_, 81 Ill.App.3d 927, 921, 37 Ill.Dec. 150, 152, 401 N.E.2d 1243, 1245 (1st Dist.1980); _Naked City_, 77 Ill.App.3d at 190, 32 Ill. Dec. at 662, 395 N.E.2d at 1043; _Sloan_, 66 Ill.App.3d at 41, 22 Ill.Dec. at 784, 383 N.E.2d at 260; _Byars v. Kolodiziej_, 48 Ill.App.3d 1015, 1017, 6 Ill.Dec. 814, 816,

**2.** It appears that, since the _Chapski_ decision, only two courts have considered whether criticism of a party in a particular instance evokes the protection of the innocent construction rule. Both decisions cast doubt over whether the rule may be applied when the particular instance/general attack distinction can be made.

In _Erickson v. Aetna Life & Casualty Co._, 127 Ill.App.3d 753, 469 N.E.2d 679 (2d Dist.1984), a chiropractor's bill which was supposed to be reviewed by a committee of chiropractors, was evaluated by a claims trainee who had no experience evaluating chiropractors' claims. On an evaluation form, the trainee noted that the plaintiff's treatment and its duration were unreasonable and unnecessary. _Id._ at 755–57, 83 Ill.Dec. at 74–75, 469 N.E.2d at 681–82. This form served as the basis for denying payment of the plaintiff's bill. The defendant argued that, because the evaluation was of a particular course of treatment, the innocent construction rule should apply. The court rejected this argument and held that, because it was made on a report which purported to be a review by the plaintiff's peers in the chiropractic profession, the statement created an "aura of incompetence" and carried such great weight that it was libelous _per se. Id._ at 761, 83 Ill.Dec. at 78, 469 N.E.2d at 685. The court went on to note that while "one accusation or mistake may not be actionable ... a false statement which imputes a lack of ability in one's profession, or an unfitness to perform one's employment, is actionable as defamation." _Id._ at 761–63, 83 Ill. Dec. at 78–79, 469 N.E.2d at 685–86.

In _Costello v. Capital Cities Media, Inc._, 111 Ill.App.3d 1009, 67 Ill.Dec. 721, 445 N.E.2d 13 (5th Dist.1982), the court recognized the particular instance/general attack distinction, but held that it did not apply in that case because the words at issue were an "actionable assault upon the plaintiff's character in general." _Id._ at 1012–15, 67 Ill.Dec. at 724–25, 445 N.E.2d at 16–17. However, the _Costello_ court also questioned whether invoking the innocent construction rule was valid when the distinction existed was valid in light of the decision in _Chapski. Id._ at 1013, 67 Ill.Dec. at 725, 445 N.E.2d at 17. Until the Illinois Supreme Court or more Illinois Appellate Courts address the question, we will assume that the innocent construction rule may be applied when a statement can be read reasonably as a criticism of a plaintiff's performance on a particular occasion or in a particular instance. However, because our decision rests only alternatively, and not solely, on the particular instance/general attack distinction, the plaintiff will not have been prejudiced by our decision if the Illinois courts decide to abolish the distinction.

When all is said and done, it strikes us that the distinction simply is another way of determining that the statements in issue are not so injurious as to be libelous _per se_. We have reached that conclusion with regard to the words in this case independently of our consideration of the innocent construction rule.

363 N.E.2d 628, 630 (4th Dist.1977) (quoting *Parmelee v. Hearst Publishing Co.,* 341 Ill.App. 339, 347–48, 93 N.E.2d 512, 515 (1st Dist.1950)). *See also Chapski,* 92 Ill.2d at 352, 65 Ill.Dec. at 888, 442 N.E.2d at 199 (noting that when it is reasonable to characterize statements as constitutional expressions of opinions, the innocent construction rule may be applied); *Renard v. Columbia Broadcasting Sys., Inc.,* 126 Ill. App.3d 563, 567, 82 Ill.Dec. at 20, 467 N.E.2d 1090, 1093 (1st Dist.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2358, 86 L.Ed.2d 259 (1985).

In sum, we hold that the statements at issue here are expressions of opinions which are not "so obviously and naturally harmful that proof of special damages is unnecessary." *Fried,* 99 Ill.2d at 26, 75 Ill.Dec. at 400, 457 N.E.2d at 394. That is, they are not libelous *per se.* We reach the same conclusion about the "misstatement of fact" regarding the amount of time the plaintiff used during oral argument. We do not believe that these statements impugned the plaintiff's integrity, imputed to him an inability to perform the responsibilities of an attorney, or prejudiced him in the legal profession. Thus, the district court properly granted the defendants' motion to dismiss. Accordingly, the district court's judgment is affirmed.