**Ronald R. POPE and Serendipity: Russian Consulting and Development, Ltd., Plaintiffs,**

**v.**

**THE CHRONICLE PUBLISHING COMPANY, d/b/a "The Pantagraph," Defendant.**

No. 93–1174.

United States District Court, C.D. Illinois, Peoria Division.

April 21, 1995.

George F. Taseff, Jennings Novick Taseff Smalley & Davis, Bloomington, IL, for plaintiffs.

Thomas N. Jacob, Thomas N. Jacob & Assoc., Bloomington, IL and Mark Sableman, Thompson & Mitchell, St. Louis, MO, for defendant.

## ORDER

McDADE, District Judge.

Before the Court is Defendant's Motion for Summary Judgment [Doc. # 7]. Defendant, The Chronicle Publishing Company, owned, operated, published, and distributed a daily newspaper circulated generally throughout central Illinois entitled The Pantagraph. Plaintiff Ronald Pope ("Pope") organized and incorporated Co–Plaintiff Serendipity: Russian Consulting & Development, Ltd. ("Serendipity"). The present controversy surrounds an article and editorial concerning Plaintiffs published by The Pantagraph in July 1992. Plaintiffs claim that the article and editorial are defamatory and cast them in a false light. Defendant moves for summary judgment on all counts of the Complaint. Plaintiffs respond to Defendant's motion by arguing that genuine disputes of material fact preclude the entry of summary judgment in this case. For the reasons which follow, the motion of Defendant is allowed.

■ "A motion for summary judgment is not an appropriate occasion for weighing evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This Court must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." *Holland v. Jefferson National Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). When faced with a motion for summary judgment, the non-moving party may not rest on its pleadings. Rather, it is necessary for the non-moving party to demonstrate, through specific evidence, that there remains a genuine issue of triable fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317,

324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

## BACKGROUND

There are no disputes as to the facts material to the resolution of the present motion. Plaintiff Pope organized and incorporated Co–Plaintiff Serendipity in October of 1991. Serendipity was created by Pope as a vehicle through which to foster economic, investment, trade, tourism, and educational development in the former Soviet Union. On January 9, 1992, Pope and Serendipity negotiated an agreement with the City of Vladimir, Russia ("the City") to build a western style house in the City. This project, known as the "First American Home in Russia," was to be a joint venture with the City supplying the land, cement for the foundation, heavy equipment, room and board for visiting construction crews, and other services, and Serendipity supplying certain materials and construction expertise. Contributing to the project were Bloomington–Normal homebuilders and corporations who volunteered their labor, expertise, appliances, and other materials.[1] Serendipity described the American House as a gift to the citizens of Vladimir, and its purpose, at least in part, was to educate Russian builders as to American construction techniques, provide assistance to Bloomington–Normal's sister city, and to provide a location in the City for sister city activities. The primary role played by Plaintiffs was that of planner and facilitator.

In the early months of 1991, problems with the American house project began to develop. Igor Eremeev,[2] a Vladimir city official, sent a telex message to Pope on February 4, 1992. This message expressed worries concerning the City's ability to finance its portion of the American House project and the

---

1. Bloomington–Normal and Vladimir are sister cities.

2. Mr. Eremeev is referred to in the parties' briefs also as "Igor Yeremeyev." Although the translation of this individual's name varies, both names refer to the same individual.

absence of information concerning the preparations of the "American side." In a telex sent February 5, 1992, and again on February 21, 1992, Pope responded to Eremeev's telex. Pope stated that it was unfortunate that the City was experiencing financial problems, that Serendipity would cover the costs which the City could not cover, that a new agreement would have to be reached, that Serendipity would supply information in response to specific requests, and that "failure to build the home at this late date will send a strong signal to both foreign businessmen and tourists that Vladimir is not a good place to work or visit." On February 24, 1992, Eremeev sent another telex to Pope stating that he had received no reply to his earlier telex. The badly garbled telex also appeared to state that Pope's interference with the administration of City affairs would make mutual collaboration difficult. On February 25, 1992, Pope responded to this telex by stating that no specific requests for information had been made and that he was "sorry there have been problems with communication between us." Following Pope's telex, Eremeev sent another telex which stated that he had just received Pope's previous telexes and that set forth a list of specific requests for information. In addition, the telex, in what comes across as an indignant tone, informs Pope that Russian interns would not be traveling to Bloomington–Normal to study American construction techniques.

On March 18, 1992, and April 15, 1992, articles appeared in the *Vladimirskie Vedomosti*, a local Vladimir newspaper published by the District Council of People's Deputies, discussing the First American Home project. These articles were written by a reporter named Svetlana Bitkina. Generally, these articles described the progress of the project, quoted from the telexes exchanged by Pope and Eremeev, questioned the motives of Pope and Serendipity, and raised doubts about the usefulness and benefits of the project to the City. The tenor of the articles is, generally, negative and suspicious. On April 9 and 10, 1992, an article written by Tatyana Veksler, a Serendipity representative, appeared in the newspaper *Molva*. This article refuted the contentions of the articles written by Ms. Bitkina.

In March of 1992, Serendipity and the City met to discuss the project and began to negotiate a revision of their agreement. To reflect the new and worsened financial condition of the City, Serendipity and the City entered into a new agreement on May 18, 1992. Pursuant to this agreement, Serendipity would absorb the majority of the project's cost in exchange for an extension of the period in which the American House would be the property of Serendipity. According to the terms of the contract, the project was to be completed on July 4, 1992, and immediately "pass into the property of the firm 'Serendipity' until the year 2003." The American House was dedicated on July 4, 1992, and completed soon thereafter. It then became the property of Serendipity which had exclusive use and possession of the house until January 1, 2003.

On July 5, 1992, the Pantagraph published an article discussing the American House project which was entitled "Vladimir newspaper questions Pope's project." The article opened by stating that the project "has been plagued by cross-cultural misunderstanding and poor communication, according to articles in a Vladimir newspaper." The articles to which the Pantagraph article referred were those written by Ms. Bitkina and published in the *Vladimirskie Vedomosti* on March 18 and April 15, 1992. The article next stated that at least one other Vladimir newspaper gave the project positive coverage. The article then synopsized Ms. Bitkina's articles; quoting liberally from the articles in so doing. Nowhere in the article does its author, Elaine Graybill, express an opinion as to the veracity of the Bitkina articles or offer self generated commentary on the project, Serendipity, or Pope.

On July 14, 1992, the Pantagraph published an editorial entitled "Let's avoid looking like 'ugly Americans'." The editorial concerned the American House project, Pope, and the questions raised by the articles written by Ms. Bitkina. The editorial began by posing a hypothetical wherein Russians came to Bloomington–Normal, offered to build a house on land supplied by the cities, and

stated that they would keep the title to the house. Such a proposal, the editorial surmised, would not be warmly received. The editorial went on to state that the laudable goals of the American House project were clouded by questions about business motives behind the project, and Pope's statement warning Vladimir officials of the consequences of failing to complete the project risked creating the appearance of "ugly Americans." The editorial ended by stating that "[w]e should be forging relationships, not creating suspicions."

Plaintiffs responded to the article and editorial published by the Pantagraph by filing the present law suit. The Complaint sets forth four claims. In Counts One and Three, Plaintiffs claim that the July 5, 1992 article published by the Pantagraph defamed and cast them in a false light, respectively. Specifically, Plaintiffs claim that the article defamed and cast them in a false light in one or more of the following respects:

a. the article, in paragraph 6, falsely stated that Plaintiffs promoted and characterized the project as "humanitarian aid" to "struggling people of Vladimir," when instead, the project was being carried on to "further the interests of an American business;"

b. the article, in paragraphs 16–21, falsely stated and insinuated that Plaintiffs misled or withheld information from Vladimir officials regarding costs, and forced the project upon the City;

c. the article, in paragraph 28, falsely stated that Pope "is already representing himself as some sort of benefactor for all Vladimirites," whose ideas "are literally pouring down upon Vladimir as if from a cornucopia;"

d. the article, in paragraph 29, falsely stated that Plaintiffs' ideas "always seem to cost the hosting side a pretty penny," and that Plaintiffs' December 28, 1991, visit to Vladimir was "hosted by a unit within the city council at a cost of 40,000 rubles"

and the "entourage celebrated the holidays in the Pokrovsky Monastery in Suzdal and took a trip to St. Petersburg. And with all this, precious little business got done."

In Counts Two and Four, Plaintiffs claim that they were defamed and placed in a false light, respectively, by the July 14, 1992, editorial published by the Pantagraph. Plaintiffs allege that the editorial defamed and cast them in a false light in one or more of the following respects:

a. the editorial falsely stated and insinuated, in paragraph 1, that Plaintiffs "kept the title" to the American Home;

b. the editorial falsely stated and insinuated, in paragraph 2, that Plaintiffs either misled or withheld information from Vladimir officials regarding the cost of the project;

c. the editorial, in paragraph 5, falsely and without basis impugned Plaintiffs' "business motives;"

d. the editorial, in paragraph 7, falsely and without basis impugned Plaintiffs as "ugly Americans throwing their weight around;"

e. the editorial, in paragraph 8, falsely and without basis accused Plaintiffs of "creating suspicions" and not "forging relationships" with Vladimir.

Defendant moves for summary judgment on all counts of the Complaint. Defendant argues in support of its motion that the language of the article and editorial is not libelous *per se* under Illinois state law,[3] and therefore, the Complaint should be dismissed. Defendant also argues that even if the language of the article and editorial could be considered libelous, they are protected by the neutral report, official report, and fair comment and criticism privileges. In addition, Defendant argues that the facts asserted in the article and editorial are substantially true and not actionable. Finally, Defendant argues that Plaintiffs' claims of false light fail for the above stated reasons.[4]

**3.** The parties agree that the common law of the State of Illinois is applicable to the substantive issues in this case.

**4.** Defendant also argues that corporations cannot assert false light claims. Plaintiffs have con-

ceded this argument in their response to Defendant's motion, and therefore, Plaintiff Serendipity's claims asserted in Counts Three and Four are dismissed.

Plaintiffs have responded to and oppose Defendant's motion. The Court shall consider Defendant's arguments *seriatim*.

## ANALYSIS

### Defamation

▉ Defendant states that the language employed by the Pantagraph article and editorial is not defamatory under Illinois law.[5] A statement is considered to be defamatory under Illinois law if it "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 10, 180 Ill.Dec. 307, 607 N.E.2d 201 (1992). The defamatory statement must be "so obviously and naturally hurtful to the person aggrieved that proof of their injurious character can be, and is, dispensed with." *Reed v. Albanese*, 78 Ill. App.2d 53, 223 N.E.2d 419, 422 (1966). *Per se* defamatory statements are so obviously and materially harmful to a plaintiff that injury to the reputation is presumed. *Kolegas*, 154 Ill.2d at 10, 180 Ill.Dec. 307, 607 N.E.2d 201. Whether a statement constitutes defamation *per se* is a question of law to be decide by the trial level court. *Quilici v. Second Amendment Found.*, 769 F.2d 414, 417 (7th Cir.1985) *cert. denied*, 475 U.S. 1013, 106 S.Ct. 1192, 89 L.Ed.2d 307 (1986).

▉ The rule in Illinois is that a plaintiff can maintain a suit for defamation without proving special damages only if the defamatory statement falls within one of the categories of *per se* defamatory statements recognized by the Illinois courts. *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1226 (7th Cir.1993). Illinois courts have recognized four categories of statements that are considered defamatory *per se:*

(1) words that impute the commission of a criminal offense;

(2) words that impute infection with a loathsome communicable disease;

(3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or

(4) words that prejudice a plaintiff, or impute lack of ability, in his or her trade, profession, or business.

*Kolegas*, 154 Ill.2d at 10, 180 Ill.Dec. 307, 607 N.E.2d 201. However, even if a statement falls within one of the above four categories, it will not be considered defamatory *per se* if it is reasonably capable of an innocent construction. *Id.* at 11, 180 Ill.Dec. 307, 607 N.E.2d 201; *Chapski v. Copley Press*, 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 442 N.E.2d 195 (1982). The innocent construction rule holds that "a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*." *Chapski*, 92 Ill.2d at 352, 65 Ill.Dec. 884, 442 N.E.2d 195. This preliminary determination is a question of law to be resolved by the court. *Id.*

▉ Truth is, of course, a complete defense to defamation. *Haynes*, 8 F.3d at 1228. The burden of proving falsity lies with the plaintiff. *Id.* If the "gist" of a defamatory statement is true, that is, if the statement is substantially true, errors in detail are not actionable. *Id.* at 1227. "A news report that contains a false statement is actionable 'only when significantly greater opprobrium results from the report containing the falsehood than would result from the report without the falsehood.'" *Id.* at 1228. Substantial truth as a complete defense coincides with the constitutional limitations placed upon defamation suits. *Id.* Although the question of whether a defamatory state-

---

5. In Illinois, statements may be considered to be defamatory *per se* or *per quod*. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 10, 180 Ill.Dec. 307, 607 N.E.2d 201 (1992). "Statements are considered defamatory *per quod* if the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain its defamatory meaning." *Id.* In the present case, Plaintiffs have not alleged any extrinsic facts designed to explain any hidden defamatory meaning of the article or editorial, and oppose Defendant's motion for summary judgment solely on the basis that the article and editorial are defamatory *per se*. Accordingly, the Court shall analyze Plaintiffs' defamation claims as arguing that the statements made by Defendant were defamatory *per se*.

ment is substantially true is, ordinarily, for the jury to decide, a court may decide the question where it finds that no reasonable jury could find that the statement was not substantially true. *Id.*

■ In addition to substantially true statements, statements of opinion are not actionable. In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–20, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990), the Supreme Court of the United States held that statements which do not contain factual assertions are protected by the first amendment and are not actionable in a suit for defamation. *See also Kolegas,* 154 Ill.2d at 14, 180 Ill.Dec. 307, 607 N.E.2d 201. "A statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes,* 8 F.3d at 1227. "Thus, unlike the statement, 'In my opinion Mayor Jones is a liar,' the statement, 'In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin,' would not be actionable." *Milkovich,* 497 U.S. at 20, 110 S.Ct. at 2706.

■ Applying the above legal principles, the Court finds that Plaintiffs' claims of defamation based upon the editorial published by Defendant on July 14, 1992, are without merit and must fail. Plaintiffs complain that paragraphs one and two of the editorial falsely insinuate that they kept the title to the American House and misled or withheld information concerning the cost of the project from Vladimir officials. The Court cannot agree. As to the statement that Plaintiffs kept the title to the project, it is substantially correct. Plaintiffs retained exclusive possession of the house and their agreement with the City stated that it was to "pass into the property of Plaintiffs until the year 2003." Significantly greater opprobrium would not result if the paragraph stated that the Russians would retain exclusive possession of the home for a period of roughly eleven years instead of stating that the Russians would retain the title to the property.

The Court finds that the gist of the statement is true and that no reasonable jury could find otherwise. As to the statement in paragraph two concerning confusion over the cost of the project, such a statement is capable of an innocent construction. Although Plaintiffs argue that the statement insinuates that they misled or withheld information, the obvious and reasonable interpretation of the statement is that the information concerning cost was not clearly communicated to Vladimir officials. Such a statement is not defamatory *per se,* and accurately reflects the communication problems which at times surrounded the project. Accordingly, the Court finds that neither statement is actionable as defamation *per se.*

■ Plaintiffs also argue that paragraph five of the editorial is defamatory because it falsely impugned their business motives. The Court cannot agree. Plaintiffs freely admit that their motives for participating in the project were, at least in part, based upon business rather than altruistic concerns. As such, it was entirely accurate to present Plaintiffs' business motives as being intertwined with other participants' altruistic motivations. Accordingly, Defendant's statement concerning Plaintiffs' business motives was true and did not harm their reputation. Defendant's statement concerning Plaintiffs' business motives is, therefore, not actionable as defamation *per se.*

■ Finally, Plaintiffs argue that paragraph seven falsely and without basis impugns Plaintiffs as ugly Americans throwing their weight around and paragraph eight falsely accuses Plaintiffs of creating suspicions and not forging relationships with the citizens of Vladimir. Plaintiffs' arguments are without merit. As to paragraph seven, Defendant did not label Plaintiffs as ugly Americans. Rather, Defendant stated that Pope's statements as set out in the editorial, the accuracy of which is not disputed, created a risk that Plaintiffs could be perceived as an ugly Americans. In addition, such a statement is no more than opinion. As to paragraph eight, it does not fit into any of the four enumerated categories of *per se* defamatory statements. The statement that one

should seek to create relationships and not suspicions does not harm the reputation of Plaintiffs. In any event, the statement is true. Plaintiffs' activities created suspicions, be they rational or not, in at least one Vladimirite, Ms. Bitkina. Accordingly, the Court finds that the statements contained in paragraphs seven and eight are not actionable as defamatory *per se*. The Court also finds that the editorial, considered as a whole, is not defamatory *per se*. The statements made in the editorial whether considered separately or as a whole simply do not rise to the level of harm or hurtfulness necessary to make the statements or the editorial defamatory *per se*.

■ Turning to Plaintiffs' claims of defamation based upon the July 5, 1992, article published in by Defendant, the Court finds that Plaintiffs' claims are without merit and must fail. First, Plaintiffs claim that paragraph six of the article falsely suggests that they promoted the American House project as humanitarian aid and is, therefore, defamatory. The Court cannot agree. The statement is substantially true and accurate. Pope himself characterized the project as being partly humanitarian aid in an interview in the *Peoria Journal Star*, a central Illinois newspaper. In that interview, Pope stated that a combination of academic, humanitarian, and business support was necessary to help Russians make progress. Also, donations of materials, appliances, labor, and expertise in the building of the American House indicates that the project was more than simply a profit seeking venture. Indeed, Pope marketed the idea of the American House as a means to aid the struggling people of Vladimir. The statement which questions the degree to which the project is humanitarian aid and suggests a business motive is not false. In addition, the Court finds that questioning the degree to which the project was humanitarian in nature does not harm Plaintiffs' reputations, nor fit within one of the four enumerated categories of defamation *per se*, and is not, therefore, actionable. Accordingly, Plaintiffs' claim of defamation based upon paragraph six fails.

■ Second, Plaintiffs' claim that paragraphs sixteen through twenty-one falsely state or insinuate that Plaintiffs misled or withheld information from Vladimir officials, and is defamatory. The Court finds that, as with Plaintiffs' claim based upon paragraph two of the editorial, Plaintiffs' claim in paragraphs sixteen through twenty-one must fail. The article is capable of an innocent construction. The article merely recounts the concerns raised by Ms. Bitkina and Vladimir officials in telexes to Pope. The City was concerned about cost and Plaintiffs and the City's officials experienced communication problems. Such a statement is not defamation *per se*, and accurately summarizes events occurring prior to the project's completion.

■ Third, Plaintiffs' claim that paragraph twenty-eight falsely states that Pope is representing himself as some sort of benefactor for all Vladimirites whose ideas are literally pouring down upon Vladimir as if from cornucopia, and is defamatory. The Court is at a loss as to how such a statement could be considered defamatory. The word "benefactor" is defined as "a person who has given help." *Webster's New World Dictionary*, 3rd College Edition (1988). This is precisely what Pope has done in Vladimir. As to the portion of the statement which states that Pope's ideas poured forth as if from a cornucopia, again, the Court finds that such a statement is not defamatory. Pope is a man with many ideas, he admits as much. The Court does not see how the charge of being a fountain of ideas in any way tarnishes Pope's reputation. Indeed, it would seem to bolster it. Although the statement may have been interpreted by Pope as being a bit sarcastic, the imagery of a cornucopia is hyperbole, and the statement is accurate. In addition, the statement does not suggest that Plaintiffs lack integrity in their business dealings or harm Plaintiffs in their business, and therefore, does not fit within any of the four enumerated categories of defamatory *per se* statements. Accordingly, the statements made in paragraph twenty-eight are not actionable as being defamatory.

■ Finally, Plaintiffs' claim that paragraph twenty-nine falsely stated that Plaintiffs' ideas always seemed to cost the hosting

side a pretty penny, and that one of Plaintiffs' trips to Vladimir cost the City 40,000 rubles and resulted in very little work being done. Plaintiffs argue that this statement constitutes defamation. The Court does not agree. Even assuming that the statement is false, the Court finds that it does not impugn the integrity of Plaintiffs' business nor cause harm to Plaintiffs' business. Accepting an expense paid trip does not tarnish one's reputation. This is true even if the trip, although purporting to be for business and pleasure, is primarily devoted to pleasure. Elements of both business and pleasure are routinely part of a trip made in the name of one's profession. The Court finds that even assuming the falsity of this statement, it does not rise to the level of defamation nor fit within any of the four enumerated categories of defamation *per se*. Accordingly, Plaintiffs' defamation claim based upon the statement in paragraph twenty-nine concerning Plaintiffs' trip to Vladimir is without merit. The statements made in the article published by Defendant whether considered separately or as a whole simply do not rise to the level of harm or hurtfulness necessary to make the statements or the article defamatory *per se*.

The Court, as set forth above, finds that Plaintiffs have failed to set forth actionable claims of defamation in Counts One and Two of the Complaint. Plaintiffs may disagree with the angle taken by the article and the viewpoint of the editorial, however, claims of defamation are not the proper mechanism to enforce balanced journalism. Rather, sending letters correcting mistakes of fact or offering another viewpoint, like those sent by Pope and his wife to the Pantagraph, is the proper form of response in a case such as the present. In any event, if one views the entire coverage given to the American House project by the Pantagraph, on balance it is favorable. Plaintiffs' defamation claims are without merit and summary judgment in favor of Defendant on Counts One and Two is appropriate.

### False Light

■ Plaintiff Pope argues in Counts Three and Four of the Complaint that the same statements in the editorial and article which he claimed were defamatory also cast him in a false light. There are three elements necessary to state a cause of action for false light:

> (1) the allegations in the complaint must show that the plaintiff's were placed in a false light before the public as a result of the defendant's actions;

> (2) the court must determine whether a trier of fact could decide that the false light in which the plaintiffs were placed would be highly offensive to a reasonable person; and

> (3) the plaintiff must allege and prove that the defendant acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false.

*Kolegas*, 154 Ill.2d at 17–18, 180 Ill.Dec. 307, 607 N.E.2d 201. The underlying purpose of the tort of false light is to define and protect an area within which every citizen must be left alone. *Id.* at 18, 180 Ill.Dec. 307, 607 N.E.2d 201.

■ Defendant's motion for summary judgment on Plaintiffs' false light claims should be granted because the Court finds that a trier of fact could not find, even assuming Plaintiffs have been placed in a false light, that the light in which Plaintiffs were cast would be highly offensive to a reasonable person. The element of offensiveness is "met 'when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.'" *Kolegas*, 154 Ill.2d at 19, 180 Ill. Dec. 307, 607 N.E.2d 201. One must "bear in mind that 'minor mistakes in reporting, even if made deliberately, or false facts that offend a hypersensitive individual will not satisfy this element.'" *Kumaran v. Brotman*, 247 Ill.App.3d 216, 232, 186 Ill.Dec. 952, 617 N.E.2d 191 (1993) *quoting Lovgren v. Citizens First Nat'l Bank*, 126 Ill.2d 411, 420, 128 Ill.Dec. 542, 534 N.E.2d 987 (1989). The Court finds that the statements complained of by Plaintiffs do not rise to the requisite level of offensiveness so as to be actionable under the tort of false light. Any mistakes in the article or editorial were relatively minor and would not justify a reasonable man in feeling seriously offended and aggrieved.

478

Plaintiffs actively sought publicity for the American Home project. Although Plaintiffs may have preferred only positive coverage, of which they received much, the mission of news agencies and journalists is to present all sides of a story so as to fully inform the public. Were they to do otherwise, the news media would be reduced to the role of performing public relations and publicity for entities seeking to publicize their activities. Pope's sensitivities were undoubtedly raised by his passion for and commitment to the American Home project and the promise of future ventures it represented. Although Pope's heightened sensitivities may have been offended, the article and editorial which questioned certain of Pope's methods in accomplishing the project would not have been seriously offensive to a reasonable and relatively dispassionate man. Accordingly, the second element of the tort of false light is lacking and summary judgment in favor of Defendant on Counts Three and Four is appropriate.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. # 7] is **GRANTED** as to all counts of the Complaint. This case is **TERMINATED.**