(No. 55884.—

ROBERT A. CHAPSKI, Appellant, v. THE COPLEY PRESS *et al.*, Appellees.

*Opinion filed October 22, 1982.*

Geister, Schnell, Richards & Brown, Chartered, and Robert A. Chapski, Ltd., both of Elgin (Van R. Richards, Jr., and Robert A. Chapski, *pro se*, of counsel), for appellant.

Lambert M. Ochsenschlager, Wayne F. Weiler, and Craig S. Mielke, of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellees.

JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Robert A. Chapski, an attorney, filed this libel action in the circuit court of Kane County seeking damages against defendants, the Copley Press, the Daily Courier News, Michael Bailey, a reporter, D. Ray Wilson, editor and publisher, and LeRoy Clemens, executive editor. The circuit court granted defendants' motion to dismiss on the basis of the "innocent construction" rule, and the appellate court affirmed (100 Ill. App. 3d 1012). We allowed plaintiff's petition for leave to appeal.

The series of newspaper articles upon which the complaint was based appeared in the Daily Courier News, the local Elgin newspaper, during the period of February 8, 1979, through January 25, 1980. There were 13 articles published on 11 different dates, most of which purported to summarize and clarify the judicial proceedings and events that preceded the death on February 2, 1979, of two-year-old Kristie Hubbard, a victim of child abuse.

Plaintiff represented the child's mother, Kathleen Insco Hubbard, in juvenile and divorce proceedings. Norman Platter, Mrs. Hubbard's boyfriend, was subsequently convicted of involuntary manslaughter and sentenced to imprisonment in connection with the child's death. Mrs. Hubbard apparently received a 30-day jail sentence for a less serious offense.

A panel of the Attorney Registration and Disciplinary Commission, after conducting hearings to determine whether the plaintiff had engaged in conduct which tended to defeat the administration of justice or to bring the courts and legal profession into disrepute, found that there was insufficient evidence to warrant the filing of a complaint with the hearing board. The panel concluded that plaintiff's actions in representing his client's interests "had absolutely nothing to do with the child's death," which occurred several months after a written order was entered awarding his client custody. The panel determined that when plaintiff appeared *ex parte* before circuit judge Neil Mahoney of Kane County, he merely obtained a written confirmation of an oral custody order that had been entered the prior week when all interested parties were present.

Plaintiff alleged in his 11-count complaint that defendants wrongfully, maliciously, and with intent to defame and injure him in his reputation and profession published false and defamatory articles and editorials which implied that he was guilty of a violation of law and morals and was not a person of integrity. The allegedly defamatory statements were set forth in plaintiff's complaint, and the full text of the articles was attached as exhibits. Plaintiff alleged that defendants knew or by the exercise of reasonable care could and would have known that the statements concerning him were false, that defendants showed actual malice, spite and ill will toward him, and that defendants published the state-

ments with reckless disregard of the truth. He further alleged that, as a result of the articles, a citizens group was formed and such group aided and abetted defendants' cause to defame plaintiff's character and reputation by writing to various authorities, including the Attorney Registration and Disciplinary Commission of the State of Illinois. Finally plaintiff asserted that, after the Commission rendered its decision, defendants had an opportunity to retract the false and libelous statements but instead further libeled him.

Both the trial and appellate courts applied the "innocent construction" rule and concluded either that the language itself could be innocently construed or that the articles as a whole could be construed as referring to the legal system rather than the plaintiff. Plaintiff argues here that the appellate court's interpretation of the articles as a criticism of the court system is a strained one and specifically directs our attention to an article entitled "Who's to blame? Many questions in baby's death," in which plaintiff's name is alleged to have appeared in bold black type 20 times. He urges that the decisions below give defendants a broad immunity in libel actions which is unwarranted.

Twenty years ago in *John v. Tribune Co,* (1962), 24 Ill. 2d 437, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148, this court affirmed a verdict and judgment for defendant in a libel action, holding that the articles in question were not "of and concerning the plaintiff" because the use of the term "alias" removed the plaintiff as the target of the publications. What has since been known as the innocent-construction rule arose from *obiter dictum* in that case (*Valentine v. North American Co.* (1974), 60 Ill. 2d 168, 172 (Ward, J., Underwood, C.J., and Schaefer, J., dissenting):

"We further believe the language in defendant's articles is not libelous of plaintiff when the innocent construction rule is consulted. That rule holds that the article is

to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (24 Ill. 2d 437, 442.)

Since that time the innocent-construction rule has been applied in dozens of appellate court cases, but in something less than a completely uniform fashion (see, *e.g., Rasky v. Columbia Broadcasting System, Inc.* (1981), 103 Ill. App. 3d 577; *Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735; *Garber-Pierre Food Products, Inc. v. Crooks* (1979), 78 Ill. App. 3d 356; *Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452; *Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260; *Moricoli v. Schwartz* (1977), 46 Ill. App. 3d 481; *Watson v. Southwest Messenger Press, Inc.* (1973), 12 Ill. App. 3d 968; *Delis v. Sepsis* (1972), 9 Ill. App. 3d 217; *Lorillard v. Field Enterprises, Inc.* (1965), 65 Ill. App. 2d 65; see also *Porcella v. Time, Inc.* (7th Cir. 1962), 300 F.2d 162; *Cantrell v. American Broadcasting Companies, Inc.* (N.D. Ill. 1981), 529 F. Supp. 746) and often over vigorous objections concerning its application or whether it continues to be a fair statement of the law (*e.g., Levinson v. Time, Inc.* (1980), 89 Ill. App. 3d 338, 343) ("attempts to eliminate the innocent-construction rule have been consistently rejected by the courts of Illinois for many years in the past"); *Kakuris v. Klein* (1980), 88 Ill. App. 3d 597, 601 ("the innocent construction rule enjoys continued vitality in Illinois"); *Vee See Construction Co. v. Jensen & Halstead, Ltd.* (1979), 79 Ill. App. 3d 1084 (the court rejected plaintiff's position that the rule was born of judicial error and should be abandoned); *Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 457 ("[t]he appellate court is not the appropriate forum to seek a change in this well-established rule of law"). It has been applied to the law of slander as well as libel to determine whether the words themselves are defamatory (*e.g., Valentine v. North American Co.* (1974), 60 Ill. 2d 168 (slander); *Kirk v. Vil-*

*lage of Hillcrest* (1975), 31 Ill. App. 3d 1063 (slander); *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345 (libel); *Wexler v. Chicago Tribune Co.* (1979), 69 Ill. App. 3d 610 (libel)), to the determination of whether the language is actionable *per se* (*e.g., Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452) and to the issue of colloquium (*e.g., John v. Tribune Co.* (1962), 24 Ill. 2d 437; *Belmonte v. Rubin* (1979), 68 Ill. App. 3d 700). Nor has treatment and application of the rule in our own court been totally consistent. (See *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 184, (Clark, J., concurring in part and dissenting in part), *cert. denied* (1981), 451 U.S. 911, 68 L. Ed. 2d 300, 101 S. Ct. 1981; compare *John v. Tribune Co.* (1962), 24 Ill. 2d 437, with *Troman v. Wood* (1975), 62 Ill. 2d 184.) It has been the subject of much critical commentary (see, *e.g.*, Polelle, *The Guilt of the "Innocent Construction Rule" in Illinois Defamation Law*, 1 N.I.U. L. Rev. 181 (1981)); (Symposium, Libel and Slander in Illinois, 43 Chi. Kent L. Rev. 1 (1966)); *cf.* Comment, *The Illinois Doctrine of Innocent Construction: A Minority of One*, 30 U. Chi. L. Rev. 524 (1963)); Stonecipher & Trager, *The Impact of Gertz on the Law of Libel In Illinois*, S.I.U. L.J. 73 (1979)), and considered to be a resurrection of the long-discarded 16th- and 17th-century English rule of *mitior sensus* (Eldredge, *The Law of Defamation* sec. 24, at 161 (1978)). The rule or variations thereof remain the law in only a few States. See *Monnin v. Wood* (1974), 86 N.M. 460, 525 P.2d 387; *Walker v. Kansas City Star Co.* (Mo. 1966), 406 S.W.2d 44; *Steffes v. Crawford* (1963), 143 Mont. 43, 386 P.2d 842; *Becker v. Toulmin* (1956), 165 Ohio 549, 138 N.E.2d 391; *Tulsa Tribune Co. v. Kight* (1935), 174 Okla. 359, 50 P.2d 350; see also *England v. Automatic Canteen Co. of America* (6th Cir. 1966), 349 F.2d 989.

The original *mitior sensus* doctrine, which required that words be interpreted, not in their natural sense, but in their best possible sense, and that the plaintiff entirely ne-

gate any possible nondefamatory meaning (see Prosser, Torts sec. 111, at 747 (4th ed. 1971); Holdsworth, *Defamation In The Sixteenth And Seventeenth Centuries*, 40 L.Q. Rev. 302, 405-08 (1924)), was developed by the common law courts in the 16th century to reduce the number of defamation actions that had unexpectedly flooded the courts when common law jurisdiction was first established (40 L.Q. Rev. 302, 404). Its artificial and strained application resulted in some "remarkable judicial acrobatics" (Lovell, *The "Reception" Of Defamation By The Common Law*, 15 Vand. L. Rev. 1051, 1064-65 (1962)), and it was eventually replaced by a more sensible rule (*Roberts v. Camden* (1807), 103 Eng. Rep. 508, 509, 9 East 93, 96 (Lord Ellenborough, C. J.) ("The rule which at one time prevailed, that words are to be understood in mitiori sensu, has been long ago superseded; and the words are now construed by Courts, as they always ought to have been, in the plain and popular sense in which the rest of the world naturally understand them")).

One of the early justifications advanced in favor of the somewhat similar, but less arbitrary, innocent-construction rule announced in *John* was that it had the desirable effect of mitigating the harshness of the doctrine of strict liability (see Comment, *The Illinois Doctrine of Innocent Construction: A Minority of One*, 30 U. Chi. L. Rev. 524, 539 (1963)) which existed in the law of defamation prior to *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997. Perhaps the strongest reason advanced in support of the rule is that it comports with the constitutional interests of free speech and free press and encourages the robust discussion of daily affairs. *Dauw v. Field Enterprises, Inc.* (1979), 78 Ill. App. 3d 67, 71.

The principal criticism of the rule seems to be that, like the doctrine of *mitior sensus*, courts generally strain to find unnatural but possibly innocent meanings of words where such a construction is clearly unreasonable and a de-

famatory meaning is far more probable. (See Polelle, *The Guilt of the "Innocent Construction Rule" in Illinois Defamation Law*, 1 N.I.U. L. Rev. 181 (1981).) To construe a publication in an unreasonable manner in order to give it an innocent interpretation is itself incompatible with the rule's requirement that words be given their "natural and obvious meaning." (See *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442.) This inherent conflict contained in the definition itself has been resolved in some cases, perhaps unwittingly, by construing the words innocently as a matter of law only where the words are *reasonably* susceptible of such a construction or the allegedly defamatory language is ambiguous. *E.g., Altman v. Amoco Oil Co.* (1980), 85 Ill. App. 3d 104, 107; *Moricoli v. Schwartz* (1977), 46 Ill. App. 3d 481, 483; *Roemer v. Zurich Insurance Co.* (1975), 25 Ill. App. 3d 606, 612; see also *Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 459 (Romiti, J., dissenting).

Given the inconsistencies, inequities and confusion that are now apparent from the interpretations and applications of the rule as originally announced in *John*, and the broader protections that now exist to protect first amendment interests (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710; *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997), together with the availability of the various privileges (see, *e.g., Colson v. Stieg* (1982), 89 Ill. 2d 205, 209; *Blair v. Walker* (1976), 64 Ill. 2d 1; *Farnsworth v. Tribune Co.* (1969), 43 Ill. 2d 286; *Zienfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345; see also *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 167-68; Restatement (Second) of Torts secs. 583-613 (1977)), we are persuaded that a modification of the innocent-construction rule would better serve to protect the individual's interest in vindicating his good name and reputation, while allowing the first amendment guarantees that "breathing space" essential to

their fruitful exercise (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710). We therefore hold that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*. This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff. *Troman v. Wood* (1975), 62 Ill. 2d 184, 189.

Because it appears that neither the trial nor the appellate court applied the innocent-construction rule as we have here held it is to be applied, the plaintiff here should have the opportunity to have the trial court make that determination. Since several opinions of the appellate court have in essence applied the modified approach we announce today, we find unpersuasive defendants' argument that application in this case of a "changed" rule would be unfair.

We note finally that the trial court, in applying the innocent-construction rule, treated some of the language as a constitutional expression of opinion, which it may well be. We point out, however, that the innocent-construction rule requires language to be so treated only where that characterization, too, is a reasonable one. See *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 158.

We accordingly reverse the appellate and circuit court judgments and remand the cause to the circuit court of Kane County for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*