**Raymond E. GLASSMAN, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

No. 84 C 6676.

United States District Court, N.D. Illinois, E.D.

May 6, 1985.

Lee C. Korbakes, law offices of Lee C. Korbakes, Chicago, Ill., for plaintiff.

Joseph Hasman, Daniel Engel, Peterson Ross Schloerb & Seidel, Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Raymond E. Glassman (Glassman) brought this libel action against his former employer, Metropolitan Life Insurance Company (Metropolitan), on the basis of diversity jurisdiction. Glassman alleges that a statement in a letter mailed by Metropolitan to policyholders formerly assigned to Glassman's account was defamatory. The case is before the court on Metropolitan's motion for judgment on the pleadings on the issue of libel or, alternatively, for partial summary judgment on the issue of conditional privilege.

## I. *Factual Background*

The facts of this case are largely undisputed. Glassman worked for Metropolitan as a sales representative from 1978 until June 24, 1983, when his employment ended. Subsequently, Glassman operated as an independent insurance broker and succeeded in replacing some Metropolitan policies owned by his former customers.

In early August, 1983, Metropolitan mailed the letter at issue to all of plaintiff's former clients. The letter first informs the reader that Glassman was no longer authorized to transact business on Metropolitan's behalf, since his employment with the company had terminated for unspecified reasons. The letter next introduces Glassman's successor, Ms. Kimsey, who would handle all of his accounts.

The rest of the letter discusses the topic of replacement of current Metropolitan policies. The letter states that "[p]eriodically, it comes to our attention that some salespeople representing other insurance companies suggest canceling existing insurance policies and applying for new insurance." Exhibit "A" to Complaint at 1. (Attached as appendix to this opinion.) The letter advises the reader of a number of perceived disadvantages to replacement. Then, in the specific portion of the letter attacked by plaintiff as libelous, Metropolitan issues the following warning with regard to so-called revolutionary offers—"In short, if you are shown an insurance plan that seems 'too good to be true', it probably is." *Id.* at 2. Metropolitan closes by offering to help the reader compare policy benefits and make an informed decision.

Glassman's complaint essentially alleges that Metropolitan, fearful of losing additional business to plaintiff, maliciously published the foregoing letter to injure his reputation by imputing fraud and lack of integrity in the conduct of his insurance business. Arguing that the letter is not defamatory as a matter of law under Illinois' innocent construction rule, defendant moves for judgment on the pleadings. In the alternative, defendant moves for partial summary judgment on the grounds that the letter is conditionally privileged.

## II. *Discussion*

On a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c),[1] all well-pleaded factual allegations in the complaint are deemed admitted, and the only question is whether the movant is entitled to judgment as a matter of law. *Roberts v. Northern Trust Co.*, 550 F.Supp. 729, 730 (N.D.Ill.1982). In this case, Metropolitan will prevail only if the pleadings make it certain that the contested statement was not libelous. *See A.D.E. Inc. v. Louis Joliet Bank and Trust Co.*, 742 F.2d 395, 396 (7th Cir.1984).

■■■■ The preliminary determination of whether an allegedly defamatory statement is actually capable of defamatory meaning is one of law to be resolved by the court.[2] *Chapski v. Copley Press*, 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 442 N.E.2d 195 (1982). In addressing this threshold question, Illinois courts apply the "innocent-construction rule." *Id.; see also Fried v. Jacobson*, 99 Ill.2d 24, 28, 75 Ill.Dec. 398, 457 N.E.2d 392 (1983). In recently modifying the rule, the Illinois Supreme Court held that:

> a written ... statement is to be considered in context, with the words and implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be

---

1. Pursuant to Fed.R.Civ.P. 12(c), the court excludes the extraneous material filed by plaintiff and treats defendant's motion solely as one for judgment on the pleadings.

2. Because plaintiff does not aver any special damages, his right to recover rests solely upon whether defendant's allegedly libelous letter is actionable *per se* and not *per quod. See Fried v.*

*Jacobson,* 99 Ill.2d 24, 26, 75 Ill.Dec. 398, 457 N.E.2d 392 (1983). Even if a sufficient allegation of special damages could be teased from the complaint, plaintiff would run afoul of the rule that innuendo is not available to impute a libel to a writing that in itself is otherwise innocent of any defamatory meaning. *See, e.g., Fulrath v. Wolfe,* 250 Ill.App. 130, 134 (1928).

interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.*

*Chapski,* 92 Ill.2d at 352, 65 Ill.Dec. 884, 442 N.E.2d 195. Under both prongs of the innocent construction rule, the court concludes that Metropolitan's letter is not defamatory as a matter of law.

■ Whether the statement complained of is susceptible of innocent construction must be resolved by the court by viewing the statement stripped of innuendo. *E.g., Audition Division, Ltd. v. Better Business Bureau,* 120 Ill.App.3d 254, 256, 75 Ill.Dec. 947, 458 N.E.2d 115 (1983). In order to be defamatory, the statement must impute to plaintiff fraud or dishonesty in the operation of his business. The letter as a whole, however, does not accuse anyone, let alone plaintiff, of fraud, want of integrity, or improper conduct. The letter merely afforded Metropolitan an opportunity to reassure its customers of continuity in the wake of a personnel change and to reconfirm its business ties. Although the letter discounts the allure of competitive and "revolutionary" policies, it does not charge plaintiff with engaging in any meddlesome activities. Moreover, the letter carefully refrains from disclosing the reasons for Glassman's termination.

Glassman takes singular exception to the statement, "if you are shown an insurance plan that seems 'too good to be true', it probably is." When considered in the context of the letter as a whole, the natural and plain meaning of these words is apparent. The statement is merely a derivative of the ancient and prudent maxim, *caveat emptor.* It is difficult to believe that the average reader would not understand it as such. Any correlation between the "too good to be true" language and plaintiff is ambiguous at most, and any possible insult of plaintiff is imaginary. Therefore, the court concludes that the "too good to be true" statement in particular and the letter as a whole may reasonably be interpreted as not imputing fraud or impropriety on Glassman's part and are not actionable as a matter of law.

In addition, the allegedly defamatory statement may reasonably be interpreted as referring to someone other than Glassman. The six-paragraph form letter only mentions Glassman's name in the first paragraph, in connection with the termination of his agency. The bulk of the letter, as discussed, advises the reader of the perceived risks posed by replacement policies in general. Aside from the introduction of Ms. Kimsey in the second paragraph, the balance of the letter does not refer to any specific individual. Rather, the letter employs generic phrases, such as "some salespeople representing other insurance companies," and passive language, exemplified by "offers are sometimes made" and "if you are shown." Considered in context and given its natural and obvious meaning, this language refers to an indeterminate group of competitor insurance companies and salespeople going well beyond plaintiff. *See Cartwright v. Garrison,* 113 Ill.App.3d 536, 541, 69 Ill. Dec. 229, 447 N.E.2d 446 (1983). Therefore, under the second prong of the innocent construction rule, the "too good to be true" language is not actionable as a matter of law.[3]

## III. *Conclusion*

For the foregoing reasons, the court holds that defendant's letter is not defamatory as a matter of law under the Illinois

---

**3.** As an alternative analysis, the court raises *sua sponte* the possibility that the "too good to be true" language is a constitutionally protected expression of opinion. *Cf. Chapski,* 92 Ill.2d at 352, 65 Ill.Dec. 884, 442 N.E.2d 195; *Catalano v. Pechous,* 83 Ill.2d 146, 158, 50 Ill.Dec. 242, 419 N.E.2d 350 (1980). The court finds that the statement may reasonably be characterized as an opinion for a variety of reasons. First, it is an evaluative statement reflecting Metropolitan's business judgment; second, many of its terms are indefinite, and any connection to the plaintiff is ambiguous to the average reader; and third, it is qualified by cautionary language, such as "probably." *See generally Ollman v. Evans,* 750 F.2d 970, 978–84 & n. 18 (D.C.Cir. 1984) (en banc, per Starr, J.), *petition for cert. filed,* —— U.S. ——, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).

innocent construction rule.[4] Accordingly, the court grants defendant's motion for judgment on the pleadings and enters judgment in its favor.

## APPENDIX

### EXHIBIT A

Mr. James Konefal

612 Inverrary Ln.

Deerfield, Il 60015

Dear Policyholder

We wish to inform you that Mr. Ray Glassman no longer represents Metropolitan, his employment with the Company having terminated June 24, 1983. Accordingly, he is no longer authorized to accept premiums or transact business of any kind on our behalf.

Ms. Sue Kimsey has been assigned to service your insurance and assist you in developing sound Metropolitan plans of coverage for your personal or business needs. If you have any questions in this regard, please contact this office, mentioning her name, and she will promptly arrange to give you the advice and service you may be seeking.

Periodically, it comes to our attention that some salespeople representing other insurance companies, suggest canceling existing insurance policies and applying for new insurance. This practice is known as "replacement", and sometimes is also accomplished by "freezing" the present contract, or by applying the values of the existing plan toward a newly purchased contract.

Metropolitan believes that replacement is generally to your disadvantage, and you should be aware of the full impact of such a decision. In other words, you should keep in mind the following:

— The same benefits for a new contract will probably cost more than for comparable older ones.

— The costs of putting a new contract on the books of an insurance compa-ny—selling, underwriting and general acquisition costs—are generally charged against premiums paid during the early years, and this is reflected in lower cash values or an applicable surrender charge.

—Older contracts usually contain more favorable benefits and provisions than those now being issued, in particular the life income settlement.

—Loan interest rates may differ.

—The contestable period will start again, which could affect the payment of a death or disability claim.

Offers are sometimes made involving plans represented to be revolutionary. These plans are generally only variations of plans that have been available for many years. Frequently recommended for purchase in a replacement situation is either a Universal Life or a deposit term type plan. Universal Life plans are usually presented with high interest rates assumed which cannot be guaranteed for the life of the policy. Deposit term type plans often carry severe penalties if the contract is surrendered or lapsed before the deposit term maturity date. In short, if you are shown an insurance plan that seems "too good to be true", it probably is.

If it is suggested that you cash surrender, borrow upon or change your present Metropolitan policy in a way that will affect its value, immediately contact this office and we will provide whatever information you need to assist you in comparing benefits and making the right decision.

Sincerely

---

**4.** In light of this opinion, the court need not decide whether defendant's letter is conditional-ly privileged as a matter of law.