**UNR LIGHTING, A DIVISION OF UNR, INC., an Illinois corporation, Plaintiff,**

v.

**T.L. ENTERPRISES, INC., a California Corporation, and Robert J. Emprimo, Defendants.**

No. 85 C 1225.

United States District Court, N.D. Illinois, E.D.

March 17, 1986.

Richard L. Sandler, Paul T. Fox, McDermott, Will & Emery, Chicago, Ill., for plaintiff.

Friedman & Koven, Chicago, Ill., for defendants.

### ORDER

NORGLE, District Judge.

Defendant, Robert J. Emprimo ("EMPRIMO"), is an author of sorts. He wrote an article (*RECALLS: Putting Recalls to work for you*) which was published by R.V. Business. R.V. Business is a division of T.L. Enterprises ("TL"). TL is also a

Defendant in this lawsuit. The Plaintiff, UNR Lighting ("UNR"), insists Emprimo's article is defamatory. Defendants do not think the article is defamatory and have moved to dismiss the Complaint. The Complaint fails to state a claim under Illinois law for defamation. Defendants' motion to dismiss is granted. *See* Fed.R.Civ.P. 12(b)(6).

The biography of Emprimo provided in *Recalls* describes him as "actively involved in the RV-service portion of the industry since 1973." Pltf's Ex. A at 86. Emprimo has held such positions as shop foreman in a recreational vehicle dealership and assistant production manager for a recreational vehicle manufacturer. He has also operated his own "independent" recreational vehicle repair shop. At the time *Recalls* was published Emprimo was the chief mechanic for a moving company.

The general theme of *Recalls* concerns the author's suggestion that recreational vehicle service personnel need not reinforce a customer's negative bent when his product is the subject of a recall or retrofit. As Emprimo states his positivist philosophy, such an incident

> handled in the proper manner can be a positive incident, one that reinforces the customer's original purchase decision. It can make him a customer for life (your best salesman at any price), or it can cost you dozens of future sales. The choice is entirely in your hands.

The article goes on to illustrate his positivist philosophy with a concrete example. The article identifies a manufacturer named "Coleman" which discovered a part of one of its products (a sidewall vent to a forced-air furnace) performed poorly. To remedy the problem, Coleman offered an "improved replacement [part], free of charge, to any dealer or customer who wanted one." Because Emprimo was aware of the replacement part, he went about creating goodwill with his customers who were not so well informed.

> Whenever a customer came to me for service, I would always look for that vent. On those occasions when I discov-

ered one of the old style vents, I would advise the customer of the available retrofit and offer to install one for only a small labor charge. In some cases, I even replaced it for free, while doing other profitable work on the coach. This often impressed customers; I am sure it clinched a least a couple of jobs on which I had bid. By replacing the vent I not only helped the customer, I also helped Coleman avoid a potentially disgruntled customer. At the same time, I was making money for myself, too!

Emprimo was, of course, driving at the obvious: a customer is likely to be grateful to a recreational vehicle service man who gratuitously points out a problem of which the owner is unaware (especially if the problem can be taken care of for little or no cost). In this context, Emprimo notes that service personnel and customers may be unaware of such information because "[i]n the vast majority of recall or retrofit situations, the manufacturers and suppliers are usually content to notify only their own dealers." The article ends on rather the same note on which it began; Emprimo urges members of the RV community to "work together intelligently" in order to eliminate customer apprehension and turn potentially negative customer experiences into positive ones.

In addition to text, the title page of Emprimo's article contains two pictures and a caption. The first picture shows a large recreational vehicle with several pieces of its exterior siding missing. The caption addressing the photograph states: "The damaged class A unit awaits repairs."

The second picture depicts a taillight assembly in an upside down position. The assembly consists of three divisions of lights. The caption addressing the photograph states: "No, the photo of this taillight assembly is not printed upside down; the unit was installed upside down."

The Complaint is somewhat coy about identifying the defamatory nature of the article. For example, the complaint alleges the appearance of the photograph in the context of the article suggests to readers

that Plaintiff's taillight assembly is faulty and that consumers who own vehicles on which the taillight assembly has been improperly installed should return the assembly to the vehicle dealer or manufacturer. Cmplt at 2–3, ¶ 8. UNR also alleges the article was intended to convey to readers that the taillight assembly was faulty and defective "when it is installed or encased upside-down." Cmplt at 4, ¶ 13.

The article, however, does not mention UNR by name.[1] Thus, the defamatory meanings alleged by UNR must arise from the subtle interplay of picture, caption and text. UNR argues that the interplay between picture, caption and text results in a defamatory meaning because 1) the picture of UNR's product appears in close proximity to the dramatic title of the article (*viz. Recalls*); 2) the article is about defective products and UNR's product is "mentioned" by implication (*viz.* the photograph). One of the bases for Defendants' motion to dismiss (in fact the only basis the Court need consider on this motion) is the application of the innocent construction rule to the alleged defamation.

The Illinois Supreme Court's definitive statement of the innocent construction rule appears in *Chapski v. Copley Press*, 92 Ill.2d 344, 65 Ill.Dec. 884, 442 N.E.2d 195 (1982).

> [A] written or oral statement is to be considered in context with the words and the implication therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.*

*Chapski*, 65 Ill.Dec. at 888, 442 N.E.2d at 199. Whether a statement is subject to a reasonable innocent construction or may reasonably be construed as applying to someone other than the Plaintiff is a question of law. *See Action Repair, Inc. v. American Broadcasting Co.*, 776 F.2d 143,

145 (CA 7 1985). Only if a statement is not reasonably capable of innocent construction will the matter be given to a fact finder to determine whether a defamatory meaning was understood. *Id.; see also Spelson v. CBS, Inc.*, 581 F.Supp. 1195, 1201 (N.D.Ill. 1984). *See generally* note, *Chapski v. Copley Press*, 17 J.Mar.L.Rev. 233 (1984).

Defendants contend the combination of picture, text and caption are reasonably susceptible to at least two innocent constructions. Defendants further suggest that Plaintiff's construction (the defamatory one) is strained and takes various elements of the article out of context. Needless to say, Plaintiff does not agree, but the Court does and Defendants' motion to dismiss must be granted. The Court need not strain to find a reasonable innocent construction of Emprimo's article. *See Chapski*, 65 Ill.Dec. at 887, 442 N.E.2d at 198.

As pointed out earlier, the theme of Emprimo's article is a simple one: people who perform services for recreational vehicle customers may and should attempt to turn occasions for recalls and retrofits (typically negative experiences) into positive customer experiences which may generate additional sales and customer loyalty. The article primarily addresses the potential service personnel hold for manipulating customers. Specific instances of product defects, recalls and retrofits are tangential to the theme, serving an illustrative function rather than the focus of the article.

The photograph of the taillight assembly manufactured by UNR, but installed upside down, impliedly illustrates Emprimo's theme as established throughout the article: a customer will be grateful to the serviceman who points out a problem (a wrongly installed taillight assembly) of which the customer is not aware. The article does not even suggest that UNR's taillight assembly is defective. Nor does the article suggest that the assembly works any better in the upright position than it does in the upside down position. *Business* readers could discern UNR's product from the photograph appearing in the article.

---

**1.** Even though UNR is not mentioned in the article by name, it receives the benefit of the inference on this motion to dismiss that *R.V.*

Nor does the article suggest owners should return the taillights to UNR. What the article, the photograph and the caption do suggest, however, is that a recreational vehicle serviceman should correct the improper installation of the taillight assembly and thereby create customer satisfaction with the particular serviceman, his employer and the recreational vehicle industry as a whole.

A second reasonable and innocent construction arising from the subtle interplay between text, photograph and caption is that the "message" emanating from the article refers to the installer of the taillight assembly and not its manufacturer (UNR). The Court's reading of the article is that the photograph and its caption cast a spotlight rather than a floodlight. Thus, attention is focused on the installer of the taillight assembly (most likely the manufacturer of the vehicle) and not on the manufacturer of the assembly. In this context, it is significant that the caption beneath the photograph states the taillight assembly "was *installed* upside down" and fails to specifically mention UNR or the manufacturer of the taillight assembly. Based on these observations, the Court finds Emprimo's article is susceptible to at least two reasonable and innocent constructions.

UNR raises arguments in opposition to the motion to dismiss, but none are persuasive. Chief among UNR's arguments is the contention that its "interpretation of [Emprimo's] [a]rticle as implying ... its product, ... is defective is simply more probable than that of Defendant, which fails to explain why the [p]roduct would be pictured in an article about defective products if the author's intention was not to imply that the product itself was defective." Pltf's Response at 8. Such an argument is at odds with this Court's interpretation of *Chapski.*

The effect of the rule enunciated in *Chapski* is to provide defamation defendants with a slight edge. For example, if both the plaintiff and defendant cite reasonable constructions of an alleged defamatory statement and the defendant's rea-sonable construction is "innocent", then *Chapski* tips the scale in favor of the defendant and the plaintiff is out of Court. The determining factor under *Chapski* is whether the construction proposed by the defendant is innocent and reasonable. The *Chapski* analysis does not require a Court to weigh the probability that one reasonable construction is more probable than another. Remember that *Chapski* itself constituted a revolt of sorts by the Illinois Supreme Court against what it perceived to be "unreasonable" application of the innocent construction rule developed from *John v. Tribune,* 24 Ill.2d 437, 181 N.E.2d 105 (1962). *See Chapski,* 65 Ill.Dec. at 887, 422 N.E.2d at 198. UNR's probability theory would add a dimension to the *Chapski* analysis which the Illinois Supreme Court gave no hint of adopting. Such a rule would alter the balance the *Chapski* court attempted to strike between the competing interests in defamation lawsuits. *See Chapski,* 65 Ill.Dec. at 888, 442 N.E.2d at 199 (*citing New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). Consequently, having held the constructions offered by Defendants are reasonable, even if the Court also accepts UNR's construction as reasonable this lawsuit would still suffer dismissal.

UNR also contends that "[a]ny doubts about whether the Article [sic] was 'of and concerning' the Plaintiff cannot be seriously entertained." Pltf's Response at 9. UNR reasons this must be the case because the pictured taillight assembly is readily identifiable as one manufactured by it. UNR misses the point. As explained above, a claim cannot withstand the *Chapski* analysis if the alleged defamation is susceptible to a reasonable and innocent construction. That rule applies equally to defamatory statements which may "reasonably be interpreted as referring to someone other than the Plaintiff." *Chapski,* 65 Ill. Dec. at 888, 442 N.E.2d at 199. And UNR's argument must fail because Emprimo's article is reasonably susceptible to the view that it refers to the *installer* of the taillight assembly rather than its *manufacturer.* The Illinois Supreme Court's hold-

ing in *Chapski* simply prevents this Court from reading UNR's complaint as alleging libel *per se*. Accordingly, UNR's complaint must be dismissed because it fails to allege special damages. *See Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 267 (CA7 1983). *See also* Fed.R.Civ.P. 9(g).

IT IS SO ORDERED.