H. H. "SAM" BARTER, Plaintiff-Appellant, v. ROBERT C. WILSON *et al.*, Defendants-Appellees.

Fourth District No. 4—87—0057

Opinion filed August 24, 1987.

Ronald D. Stanley, of Sterling & Stanley, P.C., of Fairview Heights, for appellant.

Rick W. Abbell, of Wilson & Cape, of Harrisburg, for appellee Robert C. Wilson.

Barber, Segatto, Hoffee & Hines, of Springfield (Barry O. Hines, R. Kurt Wilke, and Bernard G. Segatto III, of counsel), for appellees The Copley Press, Inc., and Steve Hahn.

JUSTICE GREEN delivered the opinion of the court:

On August 11, 1982, plaintiff, H. H. "Sam" Barter, brought suit in the circuit court of Sangamon County seeking damages for defamation against defendants, Robert C. Wilson, the Springfield State Jour-

nal-Register (Journal-Register), the Copley Press, Inc. (Copley), and Steve Hahn. On December 31, 1986, the court entered a judgment allowing the motions of the various defendants to dismiss plaintiff's three-count second-amended complaint in bar of action for failure to state a cause of action. Plaintiff has appealed. We affirm.

Plaintiff's complaint is based upon a newspaper article allegedly written by Hahn and published on August 20, 1981, in the Journal-Register, a newspaper published by Copley. A copy of the article was attached to the complaint and incorporated therein by reference. It is entitled "Battle for a piece of the Ohio River." It states that plaintiff and Wilson have applied to the Illinois Department of Transportation (DOT) for permits to develop land near Shelterville in southern Illinois on the Ohio River. Apparently, the award of a permit to plaintiff for the development of land near the river would make the development which Wilson seeks to make no longer feasible. Plaintiff's contention that he is defamed by the article is based mostly upon statements in the article concerning complaints Wilson allegedly made to Hahn in regard to favoritism that was being exercised on behalf of plaintiff's request for a permit.

Count I of the second-amended complaint is against the Journal-Register, Copley, and Hahn and seeks damages for the publication of the article. Counts II and III are against Wilson. Count II alleges that Wilson made remarks attributed to him in the article knowing that the article would be published and with the intent that would happen. That count also alleges that Wilson knew the statements he made about plaintiff were false, as shown by letters allegedly written by Wilson to Hahn and Don Vonnahme, an assistant director of DOT for Water Resources, copies of which are also attached to the complaint. Count III of the complaint alleges that Wilson defamed plaintiff by the aforesaid letters which plaintiff knew to be false. In all counts plaintiff seeks only general damages. He does allege that he has lost certain business contracts because of the alleged libel, but such a pleading lacks the specificity necessary to set forth special damages.

The grounds upon which the sufficiency of the second-amended complaint was attacked and upon which the defendants now seek to support the judgment of dismissal are: (1) under the innocent-construction rule as set forth in *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105, as modified by *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195, the statements alleged to defame plaintiff must be interpreted as not defamatory or as not referring to plaintiff; and (2) plaintiff failed to properly allege malice. We agree that the modified innocent-construction rule operates to destroy any

vitality in plaintiff's complaint and to require the dismissal of the complaint. We need not discuss any aspect of the malice issue raised.

In *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105, the court held that newspaper articles which listed a woman with various alias names as having been arrested at a certain address and charged with keeping a house of prostitution were not defamatory as to plaintiff even though she lived at that address and her name was among those names listed as aliases for the woman arrested. The court reasoned that the articles could be construed as referring only to the person bearing the actual name listed before the statement of the aliases. In *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195, the court noted that the innocent-construction rule had arisen from *dictum* in *John*, but that it had not been applied uniformly and required modification.

■ The *Chapski* court deemed the modification of the rule necessary to better protect an individual's interest in vindicating his good name and reputation while allowing the "breathing space" essential to the fruitful exercise of the first amendment guarantees. (*New York Times v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710.) The court defined the modified innocent-construction rule in these words:

> "[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.*" (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199.)

The change was intended to prevent the lower courts from straining to reach an unreasonable, but innocent construction of allegedly defamatory language. Under *Chapski*, the allegedly defamatory words must be given a reasonable interpretation within the context in which they are used.

The newspaper article describes both plaintiff and Wilson as being "wealthy and politically well-connected." Wilson is stated to have been "driven about town" in a recent trip to Springfield by his State representative. Plaintiff is stated to be a prominent road contractor, "ex-president of the Associated General Contractors of Illinois and acquainted with top DOT officials." The article also says that, according to Wilson, plaintiff is a very close friend of William Cellini, "one of downstate's most influential Republicans" and a former head of DOT. The article quotes Wilson as saying that the decision has already been

made to award the permit to plaintiff because of his "personal and political connections." The major thrust of the article concerns statements attributed by Wilson to Vonnahme, DOT's deputy director of Water Resources. Wilson is reported to have said that Vonnahme told him that "[t]he fix is in" and that "[y]ou're barking up the wrong tree. You might as well pack your tent and go home. The big boys are in on this personally."

The article then continues, stating that Wilson said (1) the term "big boys" includes "Harry Hanley, DOT's deputy secretary"; and (2) Vonnahme did not mention Cellini "by name," but that Cellini was "pulling strings" for plaintiff. The article admits that Wilson has no "hard proof," but Wilson explains how difficult it is "to document behind-the-scenes influence." Vonnahme is quoted as saying that Hanley directed him to handle plaintiff's application just as he would any other, and that he has had no contact from Cellini. Hanley is quoted as denying doing any favor for plaintiff.

 ██ Thus, the theme of the Journal-Register article is that plaintiff was going to receive the permit he requested because of favoritism. The closest the article comes to attributing any conduct to plaintiff, other than his act of applying for the permit, is the statement that "[t]he fix is in." One aspect of the modified innocent-construction rule is that, if words are given their "natural and obvious meaning" in the context in which they appear and can "reasonably be interpreted as referring to someone other than the plaintiff," the words are not actionable *per se. (Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199.) While the statement that a "fix" had taken place could reasonably be interpreted as referring to an illegal agreement, to which plaintiff was a party, for plaintiff to obtain the permit, the word "fix" could also reasonably be interpreted as referring to such an agreement to which plaintiff was not a party, but one which had been arranged for him because of his political influence but without his request for improper consideration.

The article also refers to claims by Wilson that Cellini is "pulling strings" for plaintiff. That statement also fails to necessarily imply that plaintiff has requested Cellini to do so. A reasonable interpretation of the statement would be that "strings" were being pulled for plaintiff without his request. Because of the lack of any statement in the article of any direct charge by Wilson that plaintiff has taken any improper affirmative act, Wilson's alleged charges can be reasonably interpreted, within the context of the article, as merely claims that, because of plaintiff's prominence, others were making arrangements to favor him.

Notably in *DiBernardo v. Tonawanda Publishing Corp.* (1986), 117 A.D.2d 1009, 499 N.Y.S.2d 553, the New York Supreme Court, Appellate Division, determined that a statement that a person used political influence and manipulation to obtain a permanent position with a government entity was not libelous *per se*. There, the court held that, absent a clear assertion of criminality or wrongdoing, such allegations failed, as a matter of law, to constitute grounds for recovery.

Here, the other prong of the modified innocent-construction rule which refers to the interpretation of the conduct charged also supports the circuit court's dismissal of the complaint. Black's Law Dictionary defines the word "fix" as "determine, settle, make permanent," thus implying finality, stability, certainty, and definiteness. (Black's Law Dictionary 573 (5th ed. 1979).) Thus, the statement that "[t]he fix is in" could reasonably be interpreted in the context of the article as meaning that a decision had already been made. A charge that a decision had already been made would not be defamatory as to plaintiff even if that decision was alleged to have been made after a request by plaintiff and persons of prominence (referred to in the article as "big boys") on his behalf and because of plaintiff's political prominence.

The two letters attached to the second-amended complaint are no more libelous than is the article. In the letter purportedly written to Hahn, Wilson affirms the fact that he had a conversation with Vonnahme, who indicated that Hanley was involved in the decision concerning the permits but did not say that a "fix was in." Rather, Wilson stated, he got the impression from the conversation that a "fix was in." Wilson also seems to indicate in the letter that the words concerning Wilson's packing his tent were not actually stated but that was the implication of the conversation. In his purported letter to Vonnahme, Wilson apologizes for the inaccuracies in the article about matters which Wilson had reportedly told Hahn. Neither letter sets forth any matters that constitute a libel against plaintiff.

In *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195, the complaint alleged that the allegedly defamatory words were uttered with malice. Although the supreme court remanded the case to the circuit court where the complaint had been dismissed, the supreme court gave no indication that the modified innocent-construction rule is inapplicable to situations where malice is alleged. We recognize that the *Chapski* court stated that when the modified rule was operative, the utterance "cannot be actionable *per se*." (92 Ill. 2d 344, 352, 442 N.E.2d 195, 199.) Thus, a proper allegation of special dam-

ages might have required us to consider the question of allegations of fault on the part of the defendants, but under the allegations of the second-amended complaint, we need not do so. Without determining the sufficiency of plaintiff's allegations of malice, we affirm the judgment dismissing the second-amended complaint.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.