Elaine M. GOLDBERG, Plaintiff,

v.

Rick WEIL, Thomas Scraballa, Richard Brandt, John Doe Police Officers, Deerfield Police Department, Village of Deerfield, Deerfield, Illinois, Defendants.

No. 88 C 3807.

United States District Court, N.D. Illinois, E.D.

Feb. 10, 1989.

Elaine M. Goldberg, pro se.

### ORDER

NORGLE, District Judge.

Before the court are defendants' motions to dismiss, *see* Fed.R.Civ.P. 12(b)(6) and for sanctions, *see* Fed.R.Civ.P. 11, and plaintiff's motion to amend and supplement the complaint. *See* Fed.R.Civ.P. 15(a), (d). For the following reasons, the motions to dismiss are granted, the motion for sanctions is granted, and the amendment and supplement are sticken.

### FACTS AND PROCEDURAL HISTORY

In her complaint the *pro se* plaintiff, Elaine M. Goldberg, alleges that at 5:15 p.m. on December 15, 1987, the following events occurred. Deerfield police officers, including Officer Rick Weil, arrived at plaintiff's home, in two squad cars, banged on her front and back doors, jumped over her locked fence into her back yard, shouted into her home in an attempt to gain access and threatened to return with a warrant for her arrest. Plaintiff was home at the time (presumably, had plaintiff answered the front door, the police officers would not have gone over the fence to the back door). The police officers left after fifteen minutes, returning to the police station. They then called relatives and one friend of

plaintiff in an effort to somehow help them gain access to plaintiff's home (exactly what the police officers wanted the relatives and friend to do is not made clear in the Complaint). They made inaccurate statements to this friend and these relatives, although only one such statement is specified in the complaint: the Deerfield Police have "been having trouble with her for days." Later that evening, plaintiff, on her own initiative and despite bad weather, went to the Deerfield police station with her lawyer and a relative to demand an end to the allegedly illegal activity of the Deerfield police. Nevertheless, after plaintiff, her lawyer and her relative spent one hour at the police station and left, Officer Weil called plaintiff's elderly aunt. The contents of the conversation are not disclosed in the complaint, but the call "confused and upset" the unnamed aunt. All this occurred despite the absence of any warrant or formal charges against plaintiff, although plaintiff fails to allege the absence of articulable suspicion. Plaintiff alleges that these actions deprived her of numerous constitutional rights. Moreover, plaintiff alleges that these actions were taken pursuant to village policies, and therefore she also proceeds against the Village of Deerfield.

Plaintiff subsequently moved for issuance of a preliminary injunction enjoining the Deefield Police Department and its officers from any contact with plaintiff without prior approval of the court. Her motion was based on the following events, as alleged by plaintiff. The Village of Deerfield required the display of vehicle stickers by July 1, 1988. Plaintiff mailed her application for such a sticker on June 23, 1988. She states no reason for her extreme delay in applying for the sticker. Plaintiff called the Village four times between and including June 29 and July 1. The calls were not fruitful; she was essentially told that processing of her sticker would be routine, and ticketing of her car could not be prevented. Plaintiff filed her motion on July 5, 1988 and appeared on July 8, 1988. At that hearing, plaintiff did not disclose that she had in fact already received her sticker and her car had not been ticketed. After plaintiff's in-court statement in support of her motion, the court's inquiry elicited this information. The court denied the motion for preliminary injunction.

Plaintiff later moved for leave to file an amendment and supplement to her complaint. She alleges that on December 15, 1987, her landlords, Eugene and Ellen Nordby, revealed to the police information contained in plaintiff's rental lease agreement, including names and phone numbers of plaintiff's friends and family members. She further alleges that while she did not have problems with her landlords prior to December 15, 1987, she did have problems subsequent to that date. These problems were the landlords' failure to fix the heat, and their demand for use of plaintiff's garage door opener, which plaintiff implies resulted in her car tires being slashed on two occasions. Plaintiff seeks to add the Nordbys as defendants, and add a count for conspiracy to violate plaintiff's civil rights.

## MOTIONS TO DISMISS

Defendants Thomas Skrabala (incorrectly spelled "Scraballa" in the Complaint), Richard Brandt, and the Village of Deerfield ("Village") move for dismissal, and the court grants that motion. A municipality cannot be responsible for the constitutional violations of its employees unless such violations are pursuant to official policy or custom. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978). To state a claim against a municipality, a plaintiff must allege facts which, if true, tend to support the allegation that a municipal policy exists which could have caused the injury. *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985).

Plaintiff bases her allegations of such a policy on the following: the police officers involved in the December 15 incidents were not disciplined after the fact, they were not adequately supervised so as to prevent those incidents, the "Vehicle

Sticker Incident of July 1, 1988" (which is not included in the Complaint, but rather "added" in plaintiff's memorandum opposing dismissal, hereinafter "plaintiff's memorandum"), and the fact that "it is entirely possible" that Police Chief Brandt made the decision to send police officers to plaintiff's home. These allegations are wholly inadequate to establish a Village policy. *See Ramos v. City of Chicago*, 707 F.Supp. 345 (N.D.Ill.1989) (allegation of one instance of police misconduct plus "boilerplate" allegations does not state a claim against a municipality). Rather, plaintiff alleges just one incident of a police investigation which inconvenienced her. Therefore, defendant Village of Deerfield is dismissed.

■ Plaintiff's complaint does not specify whether it seeks relief against defendants Skrabala and Brandt in their individual or official capacities. In either case, the action against them is dismissed. An action against an official in his or her official capacity is a claim against the government itself. *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir.1983). Therefore, in order to state a claim against defendant Skrabala and Brandt in their official capacities, plaintiff must allege an official policy or custom which caused plaintiff's injury. No such policy or custom is adequately alleged, as is explained above. Consequently, any action against Skrabala and Brandt in their official capacities is dismissed.

■ Any claim for individual liability under 42 U.S.C. § 1983 must contain "a showing of direct responsibility for the improper action." *Id.* at 869. Regarding Brandt, plaintiff merely alleges that he works from 8:00 a.m. to 4:30 p.m., and it is "entirely possible" that he made the decision to send police officers to plaintiff's home at 5:15 p.m. This "possibility" does not constitute a direct showing of responsi-

bility. Further, even if Brandt told plaintiff after the incident that no formal charge had been made, as plaintiff alleges, this does not constitute ratification of an illegal act; the statement is not a ratification, and it is not improper for police to question a person without a formal charge or warrant. Plaintiff alleges Skrabala telephoned plaintiff's colleague without plaintiff's permission and spoke with plaintiff's attorney but does not allege what is improper about these actions. Plaintiff also states in her memorandum opposing dismissal that Skrabala made the decision that if plaintiff's colleague did not speak with him plaintiff would be arrested that evening. This allegation based upon a conclusion is not contained in the Complaint. Moreover, no arrest was made. Presumably, plaintiff is really alleging that Skrabala wrongfully threatened to arrest plaintiff in a conversation with plaintiff's colleague. The court is unaware of any case suggesting that such a statement gives rise to a federal cause of action. Therefore, the action against Brandt and Skrabala in their individual capacities is dismissed.

Defendant Rick Weil also moves for dismissal. Weil's motion is granted for the reasons set forth below. The dismissal of all claims against Weil serves as an alternative ground for dismissal of the action against the Village, Brandt, and Skrabala, and also results in the dismissal of this action against all remaining defendants (John Doe Police Officers).

In Count I, plaintiff alleges violation of her First Amendment rights.[1] Plaintiff is woefully in error in stating that "People have a right to determine for themselves when, how, and to what extent information about them is to be communicated to others." Plaintiff's memorandum at 4. Actually, the First Amendment stands for the contrary proposition, that people have a right to determine for themselves what

---

**1.** While not purporting to state a claim for defamation, plaintiff refers to the police officers' statements as defamatory. An action for defamation is properly brought in state court. Moreover, the Complaint, as written, does not state a claim for which relief can be granted for defamation. The only specific statement alleged, that the police had "been having trouble with her for days" is subject to an innocent contruction. *Chapski v. Copley Press*, 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 888, 442 N.E.2d 195, 199 (1982). A reasonable innocent construction would be that the "trouble" in question was minimal, or not the fault of plaintiff.

they say; people do not have a right to determine what others say. In some special cases, speech shown to severely chill the exercise of rights of free association and religion has been restricted. *See, e.g., Philadelphia Yearly Meeting of Religious Society of Friends v. Tate*, 519 F.2d 1335 (3d Cir.1975) (cited by plaintiff). But plaintiff's situation does not remotely resemble such cases.

■ In Count II, plaintiff alleges violation of her Fourth Amendment rights. Under the facts of this case, as alleged by plaintiff, the court finds that neither search nor seizure occurred. The police officers simply went into the back yard to knock on the back door to establish contact with plaintiff. Therefore, the court need not determine whether a "search" of a back yard constitutes a search of property for which a plaintiff has a reasonable expectation of privacy.

In Count III, plaintiff alleges violation of her Eighth Amendment rights. However, "[a]fter further research, plaintiff has concluded that the proscription against cruel and unusual punishment only applies to convicted persons." Plaintiff's memorandum at 8. Plaintiff's further research is correct. *Bell v. Wolfish*, 441 U.S. 520, 536 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). Furthermore, plaintiff's allegations merely suggest inconvenience, not cruel and unusual treatment. Count III is dismissed.

■ In Count IV, plaintiff asserts violation of her Fourteenth Amendment procedural due process rights. Yet, plaintiff alleges no deprivation of life, liberty, or property. All she alleges is inconvenience and aggravation. To the extent that the police injured plaintiff's reputation, as she suggests, injury to reputation alone does not constitute a violation of procedural due process. *Paul v. Davis*, 424 U.S. 693, 702, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976). The only other injury plaintiff alleges is that the "assault on plaintiff's home caused her to fear for her safety in her own home, caused her to call relatives and an attorney expressing her fears for her safety, disturbed plaintiff's pets and caused extreme disturbance in the neighborhood." Complaint at ¶ 12. These happenings do not "shock the conscience" of the court. *White v. Rochford*, 592 F.2d 381, 383 (7th Cir.1979) (cited by plaintiff). In *White*, the court's conscience was shocked by the abandonment by police officers of children in an automobile on the side of a road on a cold evening by arresting the driver. Here, in sharp contrast, plaintiff was simply upset that the police knocked on her door. Plaintiff's phone calls, presumably local, were not an onerous financial burden, and were undertaken voluntarily. If plaintiff's friends, relatives and neighbors were upset, plaintiff has no standing to raise their claims on their behalf (the court does not, however, invite plaintiff's friends and relatives to file claims). Vicarious assertions of Fourth Amendment deprivations have long been rejected by the court. As for plaintiff's pets, the court will forego comment.

■ Even if plaintiff was deprived of life, liberty or property, such deprivation was not without due process of law. Plaintiff fails to allege the unavailability of a state postdeprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 534, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984).

Plaintiff moves to amend and supplement her Complaint. That motion is granted. However, the court strikes the amendment and supplement *sua sponte* because it is immaterial. See Fed.R.Civ.P. 12(f). Plaintiff fails to allege a conspiracy to violate her civil rights because she fails to allege any violations of her civil rights. She alleges that the police sought "confidential" information from her rental lease. However, a lease is not a confidential document. The court is not required to accept legal conclusions alleged by a plaintiff. *Carol Sandburg Village Condominium Association v. First Condominium Development Co.*, 758 F.2d 203, 207 (7th Cir.1985). Plaintiff alleges that her landlord has mishandled her heating problems and garage door opener. These are not federal civil rights violations; they are landlord-tenant problems. Further, the court finds that plaintiff's argument that the existence of

two landlord problems after contact with the police implies a conspiracy is not "well grounded in fact." Fed.R.Civ.P. 11.

## MOTION FOR SANCTIONS

■ Defendant moves for sanctions against plaintiff for signing her complaint and motion for preliminary injunction. *See* Fed.R.Civ.P. 11. The court is reluctant to impose sanctions in this case for two reasons. First, the plaintiff appears *pro se*, and is therefore to be accorded some latitude an attorney would not receive, particularly concerning the adequacy of legal research (although plaintiff's pleadings do indicate an understanding of legal research). Second, the court does not wish to chill the bringing of lawsuits by persons who believe that they have been mistreated by police officers.

Nevertheless, plaintiff in this case has gone too far. The complaint and memorandum opposing dismissal are replete with frivolous arguments, many of which are referred to in this opinion. Plaintiff alleges a simple police investigation (if that much; the police officers attempted to speak with her, and perhaps made a mildly disparaging statement along the way), and concludes that the police violated five amendments of the United States Constitution and conspired to violate her civil rights.

Plaintiff's motion for preliminary injunction is sanctionable, despite the fact that plaintiff appears *pro se. See Pfeifer v. Valukas,* 117 F.R.D. 420 (N.D.Ill.1987) (sanctioning *pro se* plaintiff for frivolous lawsuit). It does not require legal training to know that when one waits to apply for a vehicle sticker until eight days before posting of such a sticker is required, the sticker may arrive late; reasonable processing time is to be expected. It does not require legal training to know that it is not reasonable to expect an All Points Bulletin instructing all police officers not to ticket a particular vehicle, absent extreme circumstances. It does not require legal training to know that if one receives a ticket for failing to display a sticker after an application has been sent in, one can dispute the ticket in traffic court before "making a federal case of it." Most importantly, it does not require legal training to know that once plaintiff received her sticker, and no tickets, any possible justification for her motion disappeared.

Obviously failing to perceive the gravity of her conduct, plaintiff's Reply to Defendant's Motion for Sanctions focuses not on justifying her own conduct but on criticizing the conduct of defendant and the court. She refers to "Defense Counsel's excessive requests for extensions of time" and two motions of defendant (including the motion for sanctions), and claims that "Defendants' delaying tactics have received support from the court by repeated grants of excessive time to plead plus unnecessary and unexplained delays in hearing of motions." Plaintiff fails to comprehend the serious consideration the courts give to citizen complaints of unlawful conduct. Plaintiff concludes that she "is entitled to sanctions against Defense Counsel Ader under Rule 4(c)(2)(D) and under Rule 11" and that "Whatever may be the Court's decision in these matters, a record of the events of December 15, 1987 plus subsequent related events have been created here and will speak for itself in the future." Indeed it will.

. Defendant Village states that it has has spent $345 in attorney's fees responding to plaintiff's motion for preliminary injunction, and $460 preparing the motion for sanctions. Defendant has certainly spent a great deal more responding to the Complaint. The court awards defendant $400 in attorneys' fees, slightly less than half its fees incurred in the motion for preliminary injunction and the related motion for sanctions. The court considers this a lenient ruling. The Village, in the end, has still been forced to expend greater resources than plaintiff in this frivolous action. Moreover, "[u]nnecessary complaints sap the time of judges, forcing parties with substantial disputes to wait a longer queue and condemning them to receive less judicial attention when their cases are finally heard." *Szabo Food Service, Inc. v. Can-*

*teen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987).

In sum, this action is dismissed, the amendment and supplement is stricken, and plaintiff is ordered to pay defendant $400 in attorneys' fees.

IT IS SO ORDERED.